TRINOVA CORPORATION v DEPARTMENT OF TREASURY

Docket No. 82673. Argued November 2, 1988 (Calendar No. 10).
    Decided August 21, 1989. Rehearing denied *post,* 1203. Certio-
    rari granted by the Supreme Court of the United States on
    March 5, 1990, — US — (1990).

    Trinova Corporation, an Ohio-based corporation whose business
    activity in Michigan included $103,981,354 in sales, but only a
    small sales office, filed an amended tax return claiming a
    refund of its small business tax for 1980 and seeking permis-
    sion to use an alternative method of apportionment under § 69
    of the Single Business Tax Act similar to the method approved
    by the Court of Appeals in *Jones & Laughlin Steel Corp v Dep't
    of Treasury,* 145 Mich App 405 (1985). The requested tax-base
    apportionment would have resulted in a negative adjusted tax
    base, thereby reducing Trinova's tax liability to zero for 1980.
    Both the refund and apportionment relief were denied. There-
    after, Trinova brought an action in the Court of Claims against
    the Department of Treasury, seeking the requested apportion-
    ment relief and a refund of its claimed 1980 Single Business
    Tax overpayment. The court, Robert Holmes Bell, J., relying on
    *Jones & Laughlin,* ordered the refund on the basis of the
    alternative apportionment formula. The Court of Appeals,
    MAHER, P.J., and SHEPHERD and K. TERTZAG, JJ., reversed in
    an opinion per curiam, finding that relief under § 69 was
    available only where application of the apportionment formula
    resulted in an unfair representation of the taxpayer's Michi-
    gan-based business activity taken as a whole, concluded that
    1987 PA 39, which amended § 69 to restrict the availability of
    apportionment relief in response to *Jones & Laughlin,* was
    intended to apply retroactively, and remanded the case for
    further factual development and reconsideration in light of
    1987 PA 39 (Docket No. 100641). The plaintiff appeals.

    In an opinion by Justice BOYLE, joined by Chief Justice RILEY,

REFERENCES
Am Jur 2d, State and Local Taxation §§ 576, 577.
See the Index to Annotations under Apportionment and Allocation;
    Taxes.

and Justices BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, the Supreme Court *held:*

Apportionment relief under § 69 of the Single Business Tax Act may obtain upon a showing by the challenging party of clear and cogent evidence that the business activity attributed to the state is out of all appropriate proportion to the taxpayer's intrastate business activity or has led to a grossly distorted result.

1. The single business tax is a form of value added tax, although it is not a pure value added tax. Rather, it is a tax upon business activity. Its intended effect is to impose a tax upon the privilege of conducting business activity within Michigan, not upon income. The tax is computed by determining the taxpayer's tax base, and then allocating the value earned to the state where the business activity of the taxpayer can be fairly attributed. Apportionment relief under § 69 may be obtained if the apportionment provisions of the act do not fairly represent the extent of the taxpayer's business activity in this state. The central purpose of any apportionment provision is to ensure that each state taxes only its fair share of an interstate transaction. To preserve the constitutionality of the act, § 69 allows the use of an alternate method of apportionment if the apportionment provisions result in an unconstitutional taxation of a unitary business.

2. Generally, a state may not tax value earned outside its borders. An apportionment formula must be fair under both the Due Process and Commerce Clauses. It must be internally and externally consistent, resulting in no more than one hundred percent of the taxpayer's business activity being taxed, if all taxing jurisdictions employed the same formula, and must reflect a reasonable sense of how the business activity is generated. An apportionment formula will not be deemed unfair if it *may* result in taxation of some business activity that did not have its source in the taxing state. It will be held to be externally inconsistent only upon a showing by the taxpayer of clear and cogent evidence that the business activity attributed to the state is out of all appropriate proportion to the business transacted in that state or has led to a grossly distorted result. In *Jones & Laughlin,* the Court of Appeals erred in concluding that the apportionment provisions of the act failed to fairly represent the extent of the taxpayer's business activity because the formula distorted one element of the activity, in considering the filing of an amended return to be a petition for the purpose of securing relief under § 69, and in the approving an

alternate apportionment formula without prior approval of the commissioner.

3. In this case, although the petitioner sought apportionment relief under § 69 on the ground that the act's apportionment formula failed to accurately represent its Michigan business activity, it was not shown by clear and cogent evidence that the statutory apportionment provisions attributed business activity to Michigan that was out of all proportion to the petitioner's business actually transacted in Michigan or has led to a grossly distorted result. Viewed as a whole, the apportionment reflects a reasonable sense of the petitioner's actual Michigan business activity, clearly satisfying the internal and external consistency requirements.

Affirmed with modification.

Justice LEVIN, writing separately, stated that this case, together with the several hundred other cases pending in the Court of Claims, should be remanded for a hearing on the factual issues adverted to in the briefs of the parties and the amici curiae and in the opinion of the Court.

166 Mich App 656; 421 NW2d 258 (1988) affirmed.

*Jones & Laughlin Steel Corp v Dep't of Treasury,* 145 Mich App 405; 377 NW2d 397 (1985) overruled.

TAXATION — SINGLE BUSINESS TAX ACT — APPORTIONMENT RELIEF.

Apportionment relief under § 69 of the Single Business Tax Act may obtain upon a showing by the challenging party of clear and cogent evidence that the business activity attributed to the state is out of all appropriate proportion to the taxpayer's intrastate business activity or has led to a grossly distorted result (MCL 208.69; MSA 7.558[69]).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Ernest Getz* and *Peter S. Sheldon*); *Schwendener & Valade, P.C.* (by *Benjamin O. Schwendener, Jr.*), of counsel, for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for the defendant.

Amici Curiae:

*Miller, Canfield, Paddock & Stone* (by *Samuel J.*

*McKim III, P.C., Julianna B. Miller,* and *Robert F. Rhoades)* for Amoco Chemicals Corporation, Amoco Oil Corporation, Amoco Production Corporation, AT & T Company, AT & T Information Systems, Inc, AT & T Technologies, AT & T Teletype Corporation, Avon Products, Inc, The Gillette Company, Lorillard, Inc, Shell Oil Company, Union Oil Company of California, Vulcan Materials Company, and Weather Shield, Inc.

*Honigman, Miller, Schwartz & Cohn* (by *James H. Novis* and *William G. Christopher)* for Champion International Corporation.

*Foster, Swift, Collins & Coey, P.C.* (by *Lawrence B. Lindemer* and *Patrick R. Van Tiflin),* for Advanced Technology Laboratories, Inc., et al.

*McDermott, Will & Emery* (by *Don S. Harnack, John S. Pennell, Richard A. Hanson,* and *Gregory G. Palmer)* for Caterpillar Inc.

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry, Thomas S. Nowinski, Curtis J. Mann,* and *Joseph A. Bonventre)* for Michigan Manufacturers Association.

*William H. Crabtree;* General Motors Corporation (by *E. Alan Moorhouse),* of counsel; and Ford Motor Company (by *John M. Neberle),* of counsel, for Motor Vehicle Manufacturers Association of the United States, Inc.

BOYLE, J. In this case we are called upon to determine the proper standard for the granting of tax base apportionment relief under § 69[1] of the

---

[1] In the event that the statutory apportionment provisions fail to "fairly represent the extent of the taxpayer's business activity in this state," § 69 provides that upon the petition of the taxpayer or insis-

Single Business Tax Act, MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.*, when a taxpayer claims that the apportionment provisions of the act fail to fairly represent the extent of the taxpayer's business activity within this state. The Court of Appeals in *Jones & Laughlin Steel Corp v Dep't of Treasury,* 145 Mich App 405; 377 NW2d 397 (1985), lv den 424 Mich 895 (1986), determined that § 69 apportionment relief is appropriate when any one element of the taxpayer's business activity, as represented in its adjusted tax base, is not accurately reflected under the statutory apportionment formula, notwithstanding the fairness of the resulting apportionment. The *Jones & Laughlin* Court also approved of an alternate two-step apportionment/allocation method[2] whereby the taxpayer's tax

tence of the Commissioner of Revenue, an alternate method of apportionment may be used if reasonable and if approved by the commissioner.

[2] As part of the tax base computation, § 9(5) calls for the addition of compensation as defined in MCL 208.4(3); MSA 7.558(4)(3). See MCL 208.9(5); MSA 7.558(9)(5). Section 4(3) defines "compensation" as:

"Compensation" means all wages, salaries, fees, bonuses, commissions, or other payments made in the taxable year on behalf of or for the benefit of employees, officers, or directors of the taxpayers and subject to or specifically exempt from withholding under section 3401 of the internal revenue code. Compensation includes, on a cash or accrual basis consistent with the taxpayer's method of accounting for federal income tax purposes, payments to state and federal unemployment compensation funds, payments under the federal insurance contribution act and similar social insurance programs, payments, including self-insurance, for workmen's compensation insurance, payments to individuals not currently working, payments to dependents and heirs of individuals because of current or former labor services rendered by those individuals, payments to a pension, retirement, or profit sharing plan, and payments for insurance for which employees are the beneficiaries, including payments under health and welfare and noninsured benefit plans and payments of fees for administration of health and welfare and noninsured benefit plans. Compensation does not include discounts on the price of the taxpayer's merchandise or services sold to the taxpayer's employees, officers, or directors which are not available to other customers or payments to an independent contractor.

base was apportioned under the standard formula exclusive of the § 9 adjustment for compensation expense. The taxpayer's actual compensation expense was then directly allocated to determine the taxpayer's adjusted tax base. We are asked to review the propriety of this rule.

After due consideration, we reject the *Jones & Laughlin* rule. To determine whether the apportionment provisions of the act fairly represent the extent of a taxpayer's Michigan business activity a reviewing court or tribunal must first find, upon a showing of clear and cogent evidence by the challenging party, that the total business activity attributed to Michigan is out of all appropriate proportion to the actual business transacted in this state or leads to a grossly distorted result. The *Jones & Laughlin* Court erroneously concluded that the apportionment provisions of the act failed to fairly represent the extent of the taxpayer's total business activity because the formula distorted *one* element of that activity.

We find greater wisdom in this Court of Appeals panel's rejection of the *Jones & Laughlin* rule: Since the final apportionment percentage is the *average* of three component percentages (property, payroll, and sales), it will in all cases be larger than at least one of the component percentages unless by fortuity all of the components are equal. Thus, the *Jones & Laughlin* rule transforms the § 69 relief provision into an all-purpose tax equity provision. We agree with this Court of Appeals panel and reject that construction of § 69. We affirm with modification the decision of the Court of Appeals reversing the Court of Claims and remanding this matter for further proceedings.

# I

## FACTS

Trinova is an Ohio-based corporation which manufactures and distributes automobile components nationwide. Its activity in Michigan is confined primarily to a small sales office employing fourteen office and clerical workers who solicit sales orders for Trinova's glass division and who also provide liaison with its Michigan customers. For the tax year 1980, Trinova's sales in Michigan totaled $103,981,354, constituting over twenty-six percent of its total sales. Under the act, Trinova was assessed a tax of $293,528 which it paid.

Approximately one month after the Court of Appeals decided *Jones & Laughlin, supra,* Trinova timely filed with the state an amended tax return claiming a refund of its single business tax for the year 1980. Trinova also sought permission to use an alternative method of apportionment under § 69, similar to that approved in *Jones & Laughlin.*[3] Trinova's requested 1980 tax base apportionment would have resulted in a *negative* adjusted tax base of $2,042,458, reducing its tax liability for that year to zero.[4] Trinova's refund and apportionment relief request was denied.

---

[3] In the Court of Claims, Judge Bell recognized this deficiency in Trinova's claim for § 69 relief. He concluded, however, that because such a defect was noted in the *Jones & Laughlin* case, but was not found to foreclose § 69 relief, similar treatment of Trinova was justified.

[4] Trinova's requested apportionment calculations provided:

| | | |
|---|---:|---:|
| Tax base | | 221,125,319 |
| Deduct: Compensation | 226,356,271 | |
| Depreciation | 23,262,909 | 249,619,180 |
| Total | | ( 28,493,861) |
| Apportionment 8.9717% | | ( 2,556,384) |
| Add: Michigan compensation | | 511,774 |
| Michigan depreciation | | 2,152 |
| Allocated and apportioned tax base | | ( 2,042,458) |

Trinova then filed suit in the Court of Claims, seeking the apportionment relief previously requested, as well as $293,528 it claimed as an overpayment for 1980.[5] On cross motions for summary disposition, the Honorable Robert Holmes Bell agreed with Trinova that the statutorily provided apportionment formula did not fairly represent its 1980 business activity and ordered the state to accept Trinova's amended tax return for the year 1980. Relying on the reasoning of the Court of Appeals in *Jones & Laughlin,* Judge Bell further ordered the refund of any overpayment and interest due on the basis of Trinova's alternative apportionment formula.

The Court of Appeals reversed the decision of the Court of Claims, specifically rejecting the analysis of the *Jones & Laughlin* Court. The Court concluded that relief under § 69 "was available only where application of the apportionment formula resulted in an unfair representation of the taxpayer's Michigan-based business activity taken as a whole." *Trinova v Dep't of Treasury,* 166 Mich App 656, 663; 421 NW2d 258 (1988). The

---

[5] The state filed a counterclaim in the Court of Claims, alleging that the single business tax formula failed to fairly represent "the extent of Plaintiff's use of the State of Michigan as a market for its products," and "the significant amount of receipts which plaintiff derives from its business activities in Michigan." The state offered an alternative one-factor formula based entirely upon Trinova's Michigan sales. The state argued that Trinova's actual sales amounted to $103,981,354, but that its estimated sales under the act were only $35,196,000. Thus, the state offered that its one-factor formula was substantially more accurate than that envisioned under the act or the formula offered by Trinova.

The court rejected the state's claim as a greater distortion of Trinova's Michigan business activity than that which resulted under the act's formula. The court acknowledged that Trinova's formula was not perfect, but found it to be superior to that provided under the act or offered by the state. It appears that the state did not pursue its counterclaim on appeal.

Court further concluded that 1987 PA 39 was intended to apply retroactively, *id.,* p 665, but did not reach the issue as to whether retroactive application of 1987 PA 39 was constitutional. Rather, the case was remanded to the Court of Claims for further factual development and reconsideration in light of 1987 PA 39.

Trinova appealed that ruling to this Court, and we granted leave to appeal. 430 Mich 876 (1988).

## II

### INTRODUCTION

Our resolution of this dispute does not require that we scrutinize the mechanics of the Single Business Tax Act in detail. However, to appreciate the issues raised on appeal, a basic understanding of the components and workings of the single business tax will be helpful. The single business tax is a form of value added tax, although it is not a pure value added tax. *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 234; 362 NW2d 618 (1984).[6] "Value added is defined as the increase in the value of goods and services brought about by whatever a business does to them between the time of purchase and the time of sale."[7] In short, a value added tax is a tax upon business activity. The act employs a value added measure of business activity, but its intended effect is to impose a tax upon the privilege of conducting business activity within Michigan. It is not a tax upon income. MCL 208.31(4); MSA 7.558(31)(4).

---

[6] The single business tax is considered not to be a pure value added tax because of various exclusions, exemptions, and industry-specific adjustments that were adopted by the Legislature when the tax was enacted. See Haughey, *The economic logic of the single business tax,* 22 Wayne L R 1017, 1026-1027 (1976).

[7] Haughey, n 6 *supra,* p 1018.

Value added, or business activity, is subject to calculation by two equivalent methods. The first method begins with the taxpayer's gross receipts from which all outside purchases are subtracted. The residual figure represents the value added by the internal operations of the taxpayer. The second method is additive. All internal payments representing factors of production such as wages, rent, interest, together with the taxpayer's profit are totaled and constitute the value added by the taxpayer's efforts.[8] The act employs a modified additive method of value added computation. *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 495-497; 373 NW2d 730 (1985).

The computation of the tax involves several steps beginning with the calculation of the taxpayer's tax base.[9] Under the act, "tax base" is defined as business income (or loss) before apportionment subject to certain adjustments. MCL 208.9; MSA 7.558(9). "Business income" is essentially federal taxable income. MCL 208.3(3); MSA 7.558(3)(3). Common adjustments to business income include additions to reflect the business consumption of labor and capital. Those include adding back compensation, depreciation, dividends, and interest *paid* by the taxpayer to the extent deducted from federal taxable income. Common deductions from business income include dividends, interest, and royalties *received* by the taxpayer to the extent included in federal taxable income.[10] This income

[8] See Haughey, n 6 *supra,* pp 1018-1019; Special Report, *Evaluation of an additive-method value-added tax for use in the United States,* 30 Tax Lawyer 565, 566 (1977).

[9] See Kasischke, *Computation of the Michigan single business tax: Theory and mechanics,* 22 Wayne L R 1069 (1976); United States Advisory Commission on Intergovernmental Relations, *The Michigan single business tax: A different approach to state business taxation* (1978).

[10] In the instant case, Trinova's tax base for 1980 was $221,125,319 computed as follows:

is deducted for the purpose of value added computation because it does not result from capital expenditure by the taxpayer. Kasischke, *Computation of the Michigan single business tax: Theory and mechanics,* 22 Wayne L R 1069, 1081 (1976).

Once the taxpayer's tax base is determined, it must then be allocated to the state where the business activity of the taxpayer can be fairly attributed. "As a general principle, a State may not tax value earned outside its borders." *ASARCO, Inc v Idaho State Tax Comm,* 458 US 307, 315; 102 S Ct 3103; 73 L Ed 2d 787 (1982). For example, if a business conducts its business activity exclusively in Michigan, its entire § 9 tax base would be allocated to Michigan and subject to taxation under the act. MCL 208.40; MSA 7.558(40). If, however, the taxpayer's business activity was only partially attributable to Michigan, only a portion of that activity may constitutionally be taxed. Consequently, the act provides a formula for apportioning a taxpayer's tax base between two or more taxing states. MCL 208.45; MSA 7.558(45). The apportionment formula is an average computed as follows:

1. $\dfrac{\text{value of taxpayer's Michigan property}}{\text{average value of taxpayer's total property}} = X$

| | | |
|---|---|---:|
| 1. | business income (loss) | $(42,466,114) |
| 2. | add: compensation | 226,356,271 |
| | depreciation | 23,262,909 |
| | dividends, interest, | |
| | royalties paid | 22,908,950 |
| | other | 549,526 |
| 3. | subtotal | 230,611,542 |
| 4. | deduct: dividends, interest, | |
| | and royalties | |
| | received | 9,486,223 |
| 5. | Section 9 tax base | $221,125,319 |

2.  $$\frac{\text{total wages paid in Michigan}}{\text{total wages paid by the taxpayer}} = Y[11]$$

3.  $$\frac{\text{sales within Michigan}}{\text{total sales}} = Z$$

4.  $$\frac{X + Y + Z}{3} = \S 45 \text{ apportionment percentage}[12]$$

5.  Section 9 tax base $\times$ § 45 apportionment % =
taxpayer's apportioned tax base subject to tax.

Once apportioned, the tax base is then subject to
certain adjustments which are not significant for
the purpose of this description. The taxpayer, un-
der limited circumstances, also may elect to reduce
its apportioned tax base as provided under § 31 to
compensate for high labor compensation costs[13] or
if its tax base is large in relation to its gross

---

[11] Wages differ from compensation under the act. In MCL 208.49;
MSA 7.558(49), the definition of "wages" is taken from § 3401 of the
Internal Revenue Code and includes, with certain exceptions, any
"remuneration . . . for services performed by an employee for his
employer . . . ." 26 USC 3401(a). Recall that "compensation" is made
up of wages together with payments for such things as unemployment
compensation, FICA taxes, workers' compensation, etc. Thus, "wages"
is not synonymous with "compensation."

[12] This formula is patterned after § 18 of the Uniform Division of
Income for Tax Purposes Act, 7A ULA 355. See also anno: *Construc-
tion and application of uniform division of income for tax purposes
act*, 8 ALR4th 934; Pierce, *The uniform division of income for state
tax purposes*, 35 Taxes 747 (1957).

In this case, the value of Trinova's apportioned property equaled
.0930 (X = .0930), its apportioned compensation equaled .2328 (Y =
.2328), and its apportioned sales equaled 26.5892 (Z = 26.5892). Thus,
$\frac{X + Y + Z}{3} = 8.9717$. Trinova's adjusted tax base is therefore its

tax base (221,125,319) multiplied by the apportionment percentage
(8.9717), equaling $19,838,700.

[13] For example, under MCL 208.31(5); MSA 7.558(31)(5), Trinova was
permitted to reduce its adjusted tax base by the percentage that its
compensation divided by its unadjusted tax base exceeded sixty-three
percent, such reduction not to exceed thirty-seven percent. Trinova's
compensation ($226,356,271) divided by its tax base ($221,125,319)
equaled 102 percent. Thus, Trinova was entitled to further reduce its
adjusted tax base ($19,829,637) by thirty-seven percent *or* $7,336,966,
resulting in a final adjusted tax base subject to tax of $12,492,671.

Pursuant to 1987 PA 39, the definition of "adjusted tax base" now
includes the adjustments provided in § 31. Thus, Trinova's "adjusted
tax base" is $12,492,671 rather than $19,829,637.

receipts. MCL 208.31(2), (5); MSA 7.558(31)(2), (5).[14]
Once apportioned and adjusted, the tax base is
then multiplied by 2.35 percent to determine the
taxpayer's tax liability. MCL 208.31(1); MSA
7.558(31)(1).

At the heart of this dispute is an additional
provision applicable when the taxpayer demon-
strates that the apportionment formula provided
in § 45 does not fairly represent the extent of its
business activity in the state. MCL 208.69; MSA
7.558(69), prior to 1987 PA 39, provided:

> (1) If the apportionment provisions of this act do
> not fairly represent the extent of the taxpayer's
> business activity in this state, the taxpayer may
> petition for or the commissioner may require, in
> respect to all or any part of the taxpayer's busi-
> ness activity, if reasonable:
> (a) Separate accounting.
> (b) The exclusion of any 1 or more of the factors.
> (c) The inclusion of 1 or more additional factors
> which will fairly represent the taxpayer's business
> activity in this state.
> (d) The employment of any other method to
> effectuate an equitable allocation and apportion-
> ment of the taxpayer's tax base.
> (2) An alternate method will be effective only if
> it is approved by the commissioner.

At issue in this case is whether the Court of
Appeals properly rejected Trinova's request for
§ 69 relief.

### III

#### STATUTORY ANALYSIS

We are first asked to consider the propriety of
the Court of Appeals ruling in *Jones & Laughlin
Steel Corp, supra,* which was relied upon by the
Court of Claims and rejected by the Court of

---

[14] See Kasischke, *supra,* pp 1091-1093.

Appeals in the instant case.[15] In that case, Jones & Laughlin challenged its tax base apportionment as derived under the statutory three-factor formula for the tax years 1976, 1977, and 1978. For those years the three-factor formula resulted in the apportionment of compensation expense to Michigan which exceeded the taxpayer's actual compensation expense by an average of sixty-two percent.[16] Further, the compensation component comprised between eighty-five and ninety-four percent of Jones & Laughlin's adjusted tax base. On the basis of this information, Jones & Laughlin successfully argued that the statutory apportionment formula failed to fairly reflect its Michigan business activity and also gained approval of an alternate apportionment formula which is similar to that used by Trinova in the case at bar.

The apportionment method approved by the *Jones & Laughlin* Court applied the statutory three-factor formula to the taxpayer's § 9 tax base exclusive of the adjustment for compensation. To this figure the taxpayer's actual Michigan compensation was allocated. The sum of these two figures was then multiplied by the statutory rate to determine the single business tax liability. The Court found this method preferable because it employed the taxpayer's actual compensation figure rather than an approximated amount which "excessively attributed compensation to Michigan." *Jones & Laughlin, supra,* p 413. The Court specifically re-

---

[15] The *Jones & Laughlin* case was a consolidation of a similar dispute involving Wilson Foods Corporation. For the purpose of this discussion we refer only to the claims of Jones & Laughlin.

[16] Jones & Laughlin's compensation figures for the disputed tax years provided:

| Year | Michigan Comp | Apportioned Comp | % over Actual |
|------|---------------|------------------|---------------|
| 1976 | 26,385,639 | 39,902,544 | 51.2 |
| 1977 | 21,629,704 | 38,662,908 | 78.7 |
| 1978 | 21,782,621 | 33,739,117 | 54.9 |

jected the state's claim that § 69 relief was warranted only if the apportionment formula resulted in an unfair tax liability. Rather, the Court ruled that when any element of the taxpayer's business activity as reflected in its tax base is shown to be inaccurately represented, § 69 relief is available.

We reject the *Jones & Laughlin* rule because it effectively negates those sections of the act specifying the method for calculating apportioned tax base and thereby converts § 69 into an all-purpose tax equity provision. We believe that the error of the *Jones & Laughlin* Court may be traced to an incorrect understanding of the concept of fair apportionment.

A

The Legislature has determined that § 69 apportionment relief may be obtained "[i]f the apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state . . . ." Our first task is to determine what is meant by "fairly represent" as it relates to the proper operation of the statutory apportionment formula. Obviously, from the taxpayer's perspective, fair business activity representation is that which results in the lowest possible apportioned tax base and resulting tax liability. From the viewpoint of the state, fair representation translates into accountability for every activity of the taxpayer which under the law may be taxed by this state. While the result might be the same under either approach, in practice they are not compatible viewpoints. Consequently, unless the concept of fairness is rooted in something other than the conflicting values of the state and taxpayer or vague notions of equity, it is useless as a demarcation of entitlement to relief.

We therefore begin with the unchallenged premise that a fair representation of business activity in this case must be directed to the purpose of apportionment. The central purpose of any apportionment scheme is to "ensure that each State taxes only its fair share of an interstate transaction." *Goldberg v Sweet,* 488 US 252; 109 S Ct 582, 588; 102 L Ed 2d 607 (1989). Thus, a fair representation of business activity is one which ensures that each state taxes only its share of interstate transactions. With that central function in mind, it becomes obvious that § 69 functions essentially as a constitutional "circuit breaker."

Taxation of the intrastate activity of an interstate enterprise presents the potential for Due Process and Commerce Clause violations.[17] To preserve the constitutionality of the act, § 69 allows the use of an alternate method of apportionment if the apportionment provisions result in the unconstitutional taxation of a unitary business.[18] In other words, we believe that § 69 applies only in

[17] A state tax when applied to interstate commerce will be sustained under Commerce Clause analysis "when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc v Brady,* 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977). See also *Amerada Hess Corp v New Jersey Dep't of the Treasury,* 490 US —; 109 S Ct 1617; 104 L Ed 2d 58 (1989).

For a state to tax income generated in interstate commerce, the Due Process Clause of the Fourteenth Amendment imposes two requirements: "a 'minimal connection' between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise." *Mobil Oil Corp v Comm'r of Taxes of Vermont,* 445 US 425, 436-437; 100 S Ct 1223; 63 L Ed 2d 510 (1980).

[18] A "unitary business" has been defined "as a single business conducted both within and without the taxing state and whose tax base cannot be satisfactorily identified on a geographical basis." Hellerstein, *State income taxation of multijurisdictional corporations: Reflections on Mobil, Exxon, and H. R. 5076,* 79 Mich L R 113, 122, n 50 (1980). Appellant does not contest the fact that it is a "unitary business" for the purpose of apportionment and taxation under the act.

the most unusual of circumstances—when the statutory method operates unconstitutionally to tax the extraterritorial activity of the taxpayer. While admittedly the taxpayer gains from the operation of § 69 by a reduction of its apportioned tax base, the primary role of § 69 is to safeguard the act and not to shelter the taxpayer. Only when read in light of this basic constitutional foundation does "fairness" as a guiding principle serve the function of objective measure. Consequently, we turn to established constitutional doctrine to ascertain the guideposts of "fairness" in our review of the act's formulary apportionment scheme.

## B

As a general rule, a state may not "tax value earned outside its borders." *ASARCO, Inc, supra,* p 315. "In the case of a more-or-less integrated business enterprise operating in more than one state, however, arriving at precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice." *Container Corp v Franchise Tax Bd,* 463 US 159, 164; 103 S Ct 2933; 77 L Ed 2d 545 (1983). Because of the nebulous nature of value or, in this case, business activity, and the difficulty confronted when attempting to identify purely intrastate value, the United States Supreme Court has refused to require the use of one formula to the exclusion of all others. *Id.; Goldberg v Sweet, supra,* 109 S Ct 588. "Such an apportionment formula must, under both the Due Process and Commerce Clauses, be fair." *Container Corp, supra,* p 169. See also *Shell Oil Co v Iowa Dep't of Revenue,* 488 US 19; 109 S Ct 278; 102 L Ed 2d 186, 199 (1988) (the function of an apportionment formula is to determine the portion of a unitary business' income that can be "fairly" attributed to in-state activities).

The first component of fairness in an apportionment formula has been termed "internal consistency." *Id.*[19] To be internally consistent, a formula must result in no more than one hundred percent of the taxpayer's business activity being taxed if all taxing jurisdictions employed the same formula. In this case, the apportionment provisions of the single business tax are internally consistent because no multiple taxation would result if every state were to adopt the act. The business activity of any unitary business would be apportioned by each taxing jurisdiction using the identical method. Trinova does not contest the internal consistency of the act's apportionment formula.

The second component of a fair apportionment formula is "external consistency." External consistency requires that the choice of factors used in the formula "must actually reflect a reasonable sense of how [the business activity] is generated." *Id.; Goldberg v Sweet, supra,* 109 S Ct 589. The constitution does not require an exact apportionment, and an apportionment formula will not be judged to be unfair if "it *may* result in taxation of some [business activity] that did not have its source in the taxing State . . . ." *Moorman Mfg Co v Bair,* 437 US 267, 272; 98 S Ct 2340; 57 L Ed 2d 197 (1978). An apportionment formula will be struck as being externally inconsistent only upon a showing by the taxpayer of "clear and cogent evidence" that the business activity attributed to the state is "out of all appropriate proportions" to the business transacted in that state, or "has led to a grossly distorted result." *Moorman Mfg Co, supra,* p 274; *Norfolk & Western R Co v Missouri*

[19] See, generally, Hellerstein, *Is "internal consistency" foolish: Reflections on an emerging Commerce Clause restraint on state taxation,* 87 Mich L R 138 (1988).

*State Tax Comm,* 390 US 317, 326; 88 S Ct 995; 19 L Ed 2d 1201 (1968).[20]

In *Jones & Laughlin,* the Court of Appeals ignored these principles of fair apportionment. Rather, it found the statutory apportionment formula to unfairly represent the extent of the taxpayer's intrastate business activity because compensation, as reflected in the § 9 tax base, was "over-apportioned or excessively attributed" to Michigan. *Jones & Laughlin, supra,* p 413. We cannot agree with this conclusion.[21]

First, while we agree with the *Jones & Laughlin* Court that the test for fairness is not whether the taxpayer's final tax liability is reasonable when

---

[20] Although our opinion is not based upon this observation, we find it instructive that the amended § 69 now provides in relevant part:

> The apportionment provisions of this act shall fairly represent the business activity attributed to the taxpayer in this state, taken as a whole and without a separate examination of the specific elements of the tax base such as depreciation, compensation, or income, unless it can be demonstrated that the business activity attributed to the taxpayer in this state is out of all appropriate proportion to the actual business transacted in this state and leads to a grossly distorted result. [MCL 208.69(3); MSA 7.558(69)(3), as amended by 1987 PA 39.]

[21] Arguably, the taxpayer's true dispute in *Jones & Laughlin* was not with the apportionment formula, but, rather, with the computation of the § 9 tax base. Indeed, the taxpayers alternate formula in that case simply applied the statutory formula to its § 9 tax base exclusive of the compensation adjustment and allocated the exact amount of its Michigan compensation to the apportioned figure.

Indeed, in its reply brief, Trinova admits that it questions the constitutionality of the § 9 tax base computation and claims that § 69 after *Jones & Laughlin* "cure[d] the flaws in the method by which Section 9 establishes the tax base." Trinova is mistaken as to the proper function of § 69. Its purpose is to provide relief when the statutory apportionment provisions result in the unconstitutional taxation of a unitary business. Section 69 was not intended to shelter the taxpayer from rightful tax liability and should not be read to provide apportionment relief anytime a taxpayer can show, by manipulating its tax base, that a lower tax liability can be achieved. When read in this manner, § 69, which was intended by the Legislature to be the rule of exception, becomes instead the rule of general application.

weighed against its intrastate business activity, we disagree with the standard adopted by that Court. The Court of Appeals determined that the statutory formula yielded an unfair apportionment because 1) eighty-five to one hundred percent of the taxpayers' adjusted tax bases consisted of compensation; 2) use of the three-factor formula overstated compensation more than fifty percent; and 3) the taxpayers' actual Michigan compensation could be precisely calculated. On these facts, the Court held that the taxpayers had "presented clear and convincing evidence 'that the statutory formula inadequately or inaccurately represent[ed] [their] unitary business activity in the taxing state.'" *Jones & Laughlin, supra,* p 413, quoting, *Donovan v Dep't of Treasury,* 126 Mich App 11, 21; 337 NW2d 297 (1983). As noted, however, the test for fair apportionment is not whether a formula results in inadequate or even inaccurate apportionment. The test is whether the use of a particular method of apportionment results in business activity being attributed to this state which is "out of all appropriate proportions" to the taxpayer's intrastate business activity, or has "led to a grossly distorted result."[22]

As explained earlier, "fairness" in the context of multistate tax or tax base apportionment must be considered under Due Process and Commerce Clause analysis. The opinion of the Court of Appeals in *Jones & Laughlin* is wholly lacking in consideration of internal consistency. Even assum-

---

[22] We recognize that a juxtaposition of this language with that of § 69 suggests a teleological gulf. However, had the legislation utilized this precise language, the statute would be left inflexibly tied to the language of the most recent position of the United States Supreme Court without regard to subsequent changes. Flexibility, which we believe to be the essential purpose of § 69, requires the more general language of "fairly represent." Unfortunately, it appears that *Jones & Laughlin* has forced the Legislature's hand in amending the code. See n 20, p 158.

ing that the Court's analysis was directed towards the concerns of external consistency, we do not believe that identifying a fifty-percent overstatement of compensation, which is but one element of the taxpayer's intrastate business activity, demonstrates by "clear and cogent evidence" that the business activity attributed to this state was "out of all appropriate proportion" to the business transacted in the state, or has led "to a grossly distorted result."

As a precondition to § 69 relief, a showing must be made that the taxpayer's business activity within this state is unfairly represented. Under the Single Business Tax Act, "business activity" is defined as encompassing any transfer of property, performance of services, or a combination thereof "with the object of gain, benefit, or advantage." MCL 208.3(2); MSA 7.558(3)(2).[23] The subject of the act thus encompasses the complete range of entrepreneurial activities of which compensating employees is but one part. Consequently, to conclude that a taxpayer's business activity is not fairly apportioned because a single component of that activity, when examined by geographical accounting, is not accurately reflected under the statutory apportionment scheme belies the very definition of

---

[23] MCL 208.3(2); MSA 7.558(3)(2) provides:

"Business activity" means a transfer of legal or equitable title to or rental of property, whether real, personal, or mixed, tangible or intangible, or the performance of services, or a combination thereof, made or engaged in, or caused to be made or engaged in, within this state, whether in intrastate, interstate, or foreign commerce, with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others, but shall not include the services rendered by an employee to his employer, services as a director of a corporation, or a casual transaction. Although an activity of a taxpayer may be incidental to another or other of his business activities, each activity shall be considered to be business engaged in within the meaning of this act.

business activity. "The problem with this method is that formal accounting is subject to manipulation and imprecision, and often ignores or captures inadequately the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise." *Container Corp, supra,* pp 164-165.

Obviously, compensation will be a substantial portion of the tax base in most businesses. Nonetheless, we cannot ignore the integrated nature of formulary apportionment which rejects separate accounting as a means to identify business activity by reference to a discrete geographic boundary. As the United States Supreme Court has observed, it is "precisely the sort of formal geographical accounting whose basic theoretical weaknesses justify resort to formula apportionment in the first place." *Container Corp, supra,* p 181.[24] Further, while admittedly the three-factor formula is not perfect, and its application in a value added tax scheme is relatively unique, the constitution requires neither a perfect formula nor a perfect apportionment. The United States Supreme Court long ago upheld the constitutionality of formulary apportionment. See, e.g., *Hans Rees' Sons, Inc v North Carolina,* 283 US 123; 51 S Ct 385; 75 L Ed

[24] In *Mobil Oil Corp v Comm'r of Taxes of Vermont,* n 17 *supra,* p 438, the United States Supreme Court aptly noted the failings of separate accounting:

> [S]eparate [geographical] accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale. Because these factors of profitability arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable "source." Although separate geographical accounting may be useful for internal auditing, for purposes of state taxation it is not constitutionally required. [Citations omitted.]

879 (1931). Further, the Court has specifically found that property, payroll, and sales may be appropriate ingredients of an apportionment formula, *Butler Bros v McColgan,* 315 US 501, 509; 62 S Ct 701; 86 L Ed 991 (1942). Indeed, the three-factor formula is viewed as "something of a benchmark against which other apportionment formulas are judged." *Container Corp, supra,* p 170. See also *Amerada Hess Corp v New Jersey Dep't of the Treasury,* 490 US —; 109 S Ct 1617; 104 L Ed 2d 58 (1989).

In short, while we recognize that certain components of the taxpayer's business activity are subject to accurate geographic attribution, we do not believe that "business activity" as defined under the act is susceptible to accurate analysis when only one component of the total business effort is examined. To properly judge the propriety of a taxpayer's apportioned business activity, we must view the activity as a whole.

IV

THE APPLICATION OF § 69 TO TRINOVA

In the present case, Trinova sought § 69 apportionment relief on the ground that its apportioned 1980 compensation was approximately forty times greater than its actual Michigan compensation, and that its apportioned depreciation was approximately one thousand times greater than its actual Michigan depreciation. On the basis of these two facts, Trinova persuaded the Court of Claims that the *Jones & Laughlin* rule entitled it to relief because the act's apportionment formula failed to accurately represent its Michigan business activity. We do not believe that these two facts show by "clear and cogent evidence" that the statutory apportionment provisions attributed business ac-

tivity to Michigan which was "out of all appropriate proportion" to Trinova's actual business transacted in Michigan, or "has led to a grossly distorted result."

As calculated under § 45, the apportionment formula resulted in an apportionment percentage of 8.9717. More specifically, of Trinova's § 9 tax base of $221,125,319, approximately nine percent was apportioned to Michigan resulting in an apportioned tax base of $19,838,700. We simply cannot conclude as a matter of law that this amount is out of all appropriate proportion to Trinova's Michigan business activity or results in a grossly distorted apportionment figure. Trinova's actual Michigan compensation was $511,774, and its actual property as reflected in its depreciation expense was $2,152. While these figures obviously represent a very small percentage of Trinova's total business activity, they are offset by its Michigan sales figure of $103,981,354.[25] When viewed as a whole, we believe the averaged ratios of Trinova's payroll, property, and sales "actually reflect a reasonable sense of how [its Michigan business activity was] generated," clearly satisfying the constitutional requirements of internal and external consistency.

We emphasize that § 69 was not intended as an all-purpose tax equity provision. However, assuming arguendo that the Legislature intended § 69 as a tax equity provision, we would nevertheless reject Trinova's petition[26] for relief. Our reading of

---

[25] Sales of goods are considered in this state if "[t]he property is shipped or delivered to a purchaser, other than the United States government, within this state regardless of the free on board point or other conditions of the sale." MCL 208.52(a); MSA 7.558(52)(a). Under MCL 208.3; MSA 7.558(3), "business activity" includes the transfer of legal title to property in this state with the object of gain, benefit, or advantage. Thus, under the act, Trinova's sales to Michigan purchasers clearly were "business activity."

[26] Although the matter is not addressed by the parties to this

MCL 208.68(1); MSA 7.558(68)(1) indicates that certain businesses which do not own or rent real estate or tangible personal property in Michigan and which do not have gross sales in Michigan in excess of $100,000 may use an apportioned tax base consisting only of sales. Thus, it is clear that the Legislature was aware that business activity heavily weighted toward sales might better be taxed upon a different base. However, the Legislature provided relief in only the more extreme cases. The apportionment formula proposed by Trinova under § 69[27] uses a tax base identical to that provided in § 68, yet Trinova does not meet any of the qualifying criteria imposed by the Legislature. We find it most difficult to believe that the Legislature intended to provide relief under the general provision of § 69 which it expressly

appeal, we believe that the *Jones & Laughlin* Court also erred procedurally. In *Jones & Laughlin,* the Tax Tribunal's grant of relief was affirmed despite the taxpayer's failure to "petition" the commissioner for relief as required by § 69(1) or obtain approval for the alternate formula as required by § 69(2). In our view, § 69(1) clearly requires that a taxpayer petition for relief before an alternate apportionment formula will be considered. Further, § 69(2) specifically mandates that "[a]n alternate method will be effective only if it is approved by the commissioner." MCL 208.69(2); MSA 7.558(69)(2). It is undisputed that the taxpayers in *Jones & Laughlin* neither petitioned for, nor obtained commissioner approval of the apportionment formula ultimately used. The Tax Tribunal excused this requirement in *Jones & Laughlin* because of a lack of procedural rules for the evaluation of an alternate formula. We cannot so easily disregard the express language of §§ 69(1) and 69(2).

The petition requirement of § 69(1) and the prior approval requirement of § 69(2) are in no way dependent upon the adoption of formal procedural rules for the evaluation of an alternate apportionment formula. We cannot condone a ruling which permits clear legislation to be ignored. In short, the Court of Appeals in *Jones & Laughlin* failed to properly determine the fairness of the statutory apportionment formula under accepted constitutional measures and further failed to enforce the express procedural requirement of §§ 69(1) and 69(2) before approving the taxpayers' requests for apportionment relief. This is clarified in the amended § 69(4). In remanding this matter, we do not preclude the defendant from raising this issue in the Court of Claims.

[27] See n 4.

precluded under the more specific § 68. See, generally, 2A Sands, Sutherland Statutory Construction (4th ed), § 51.05, pp 499-500. It is indeed the careful and specific drafting of the Single Business Tax Act which leads us to the conclusion that the Legislature saw no need for an all-purpose tax equity provision.

In passing, we also note that the sales at issue were not "at retail," MCL 205.51; MSA 7.521, and therefore do not fall within Michigan's General Sales Tax Act, MCL 205.52; MSA 7.522. Therefore, if Trinova's construction of the Single Business Tax Act is correct, $103,981,354 in sales will be entirely untaxed. Considering the two acts in pari materia, *County Rd Ass'n of Michigan v Bd of State Canvassers,* 407 Mich 101, 118-119; 282 NW2d 774 (1979),[28] we believe that this result was not within the intentions of the Legislature in enacting the single business tax. Again, we observe the express legislative intent that the "tax so levied and imposed is upon the privilege of doing business . . . ." MCL 208.31(4); MSA 7.558(31)(4).

While we do not adopt all of the reasoning of the Court of Appeals in this case, we agree with its conclusion that Trinova has failed to demonstrate an entitlement to tax-base relief under § 69. To the extent that the decision in *Jones & Laughlin* is inconsistent with this opinion, it is overruled.[29]

---

[28] As explained in 2A Sands, Sutherland Statutory Construction (4th ed), § 51.03, p 468, the guiding principle for whether statutes are in pari materia is whether it is natural and reasonable to think that the understanding of members of the Legislature would be influenced by the other statute. In our view, it is natural and reasonable to think that the Legislature considered the scope of the General Sales Tax Act in drafting the Single Business Tax Act.

[29] We also are asked to decide whether 1987 PA 39 was intended by the Legislature to apply retroactively to tax years prior to 1987, and, if so, whether that enactment is constitutional. The Attorney General argues that even if *Jones & Laughlin* correctly construed the act prior to amendment, 1987 PA 39 must be applied retroactively to defeat

CONCLUSION

We hold that § 69 apportionment relief may obtain upon a showing by the challenging party of clear and cogent evidence that the total business activity attributed to the state is out of all appropriate proportion to the taxpayer's intrastate business activity or has led to a grossly distorted result. Here, the challenging party, Trinova, has failed to show that its total business activity attributed to Michigan is out of all appropriate proportion to the taxpayers intrastate business or has led to a grossly distorted result.

We therefore affirm that aspect of the Court of Appeals decision reversing the decision of the Court of Claims. This matter is remanded to the Court of Claims for further proceedings consistent with this opinion.

RILEY, C.J., and BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.

LEVIN, J. (*separate opinion*). I would remand this cause for a hearing, together with the several hundred other cases pending in the Court of Claims, on the factual issues adverted to in the briefs of the parties and the amici curiae and in the opinion of the Court. See *Commonwealth Edison Co v Montana,* 453 US 609, 638; 101 S Ct 2946; 69 L Ed 2d 884 (1981) (Blackmun, J., dissenting).

Trinova's claim. Trinova itself seeks no relief under the amendment. Therefore, in light of our rejection of the rule of *Jones & Laughlin* and Trinova's claim for apportionment relief, we find it unnecessary to reach these remaining two issues.