CORNING, INC v DEPARTMENT OF TREASURY

Docket No. 158852. Submitted April 18, 1995, at Lansing. Decided
July 7, 1995, at 9:00 A.M. Leave to appeal sought.

Corning, Inc., brought an action in the Court of Claims against
the Department of Treasury, alleging that it overpaid its 1988
single business taxes because apportionment of its tax base
pursuant to the three-factor formula of MCL 208.45; MSA
7.558(45) attributed to it business activity in Michigan that was
out of all appropriate proportion to the actual business trans-
acted in the state and led to a grossly distorted result. The
plaintiff sought exception from the apportionment formula, as
allowed under MCL 208.69(3); MSA 7.558(69)(3). The court,
Michael G. Harrison, J., granted summary disposition for the
defendant. The plaintiff appealed.

The Court of Appeals *held:*

Allegations by the plaintiff that it had little property and a
small work force in Michigan in comparison to its property and
work force in other states do not state a cognizable claim for
relief from the apportionment formula because two factors of
the formula, the ratio of Michigan property to total property
and the ratio of Michigan payroll to total payroll, already take
those matters into consideration. The allegations that workers
employed and property owned or rented by the plaintiff in
Michigan were all sales-related and were not involved in prod-
uct manufacture, formulation or design, or research or develop-
ment does not state a cognizable claim for relief from the
apportionment formula. The plaintiff's sales in Michigan had a
profound effect on the direction of its design, production, and
distribution process, were part of its essential economic strate-
gies, and were an integral part of company-wide business
activity.

Affirmed.

TAXATION — SINGLE BUSINESS TAX — APPORTIONMENT RELIEF.

A taxpayer whose business activities are taxable both within and

REFERENCES
Am Jur 2d, State and Local Taxation § 297.
See ALR Index under Apportionment and Allocation; States; Taxes.

without the State of Michigan does not establish entitlement to relief from the apportionment formula of the Single Business Tax Act where it alleges that its property and work force in Michigan are minuscule when compared to its property and work force outside Michigan and that its property and work force in Michigan are all sales-related and not involved in product manufacture, formulation or design, or research or development (MCL 208.69[3]; MSA 7.558[69][3]).

*Howard & Howard Attorneys, P.C.* (by *Patrick R. Van Tiflin, Michele L. Halloran,* and *Ellen M. Harvath*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Russell E. Prins* and *Terry P. Gomoll,* Assistant Attorneys General, for the defendant.

Before: BANDSTRA, P.J., and MURPHY and A. C. PERLOS,* JJ.

BANDSTRA, P.J. Plaintiff Corning, Inc., filed suit against the Department of Treasury, claiming that it should be allowed tax-base apportionment relief under MCL 208.69; MSA 7.558(69) from the three-factor apportionment formula. The Court of Claims dismissed the claim upon a motion for summary disposition. We affirm.

Corning is a New York corporation engaged in the manufacture and sale of specialty glass and ceramics, telecommunications, laboratory sciences, and consumer houseware products. Operating in Michigan during 1988, Corning was liable for payment of the Michigan Single Business Tax (SBT). The SBT is imposed upon all persons who engage in business activity, measured by value added, within the State of Michigan. MCL 208.31(1); MSA 7.558(31)(1). A taxpayer like Corning, engaged in business activity both in and out of Michigan, is

* Circuit judge, sitting on the Court of Appeals by assignment.

required to apportion its tax base. MCL 208.41; MSA 7.558(41). Michigan uses a three-factor apportionment formula to determine what part of a multistate taxpayer's tax base represents business activity in Michigan. The formula is an average of three ratios: Michigan property to total property, Michigan payroll to total payroll, and Michigan sales to total sales. MCL 208.45; MSA 7.558(45). The computation is made as follows:

1. $\dfrac{\text{value of taxpayer's Michigan property}}{\text{value of taxpayer's total property}^{[1]}}$ $= X$

2. $\dfrac{\text{total wages paid in Michigan}}{\text{total wages paid by the taxpayer}}$ $= Y$

3. $\dfrac{\text{sales within Michigan}}{\text{total sales}}$ $= Z$

4. $\dfrac{X + Y + Z}{3}$ $=$ apportionment percentage

MCL 208.45-208.51; MSA 7.558(45)-7.558(51). Corning's 1988 property factor was .001281, its payroll factor was .000918, and its sales factor was .013510. Adding these three together and dividing by three yields an apportionment factor of .0052363, or approximately one-half of one percent. Thus, using the apportionment formula, Corning was liable for payment under the SBT with respect to about one-half of one percent of its total value-added tax base.

---

[1] The Supreme Court has stated this denominator as an "average value of taxpayer's total property." *Trinova Corp v Dep't of Treasury*, 433 Mich 141, 151; 445 NW2d 428 (1989). However, the statute provides for an "average value of property" only to account for differences in value during a tax year. MCL 208.48; MSA 7.558(48). There is no record or dispute regarding any property tax averaging in this case and, for the purpose of simplicity, we describe this ratio as if the value of Corning's Michigan and total property can be determined without averaging.

MCL 208.69(3); MSA 7.558(69)(3) provides an exception to the three-factor apportionment formula:

> The apportionment provisions of this act shall fairly represent the business activity attributed to the taxpayer in this state, taken as a whole and without a separate examination of the specific elements of the tax base such as depreciation, compensation, or income, unless it can be demonstrated that the business activity attributed to the taxpayer in this state is out of all appropriate proportion to the actual business transacted in this state and leads to a grossly distorted result.

Corning requested relief under § 69 from the three-pronged apportionment formula. After defendant denied this request, Corning initiated this action for a refund of its claimed SBT overpayment for the 1988 tax year. The trial court granted defendant's motion for summary disposition, which subsequently led to this appeal.

The three-factor apportionment formula has been fully reviewed by the Michigan and United States Supreme Courts in *Trinova Corp v Dep't of Treasury*, 433 Mich 141; 445 NW2d 428 (1989), aff'd 498 US 358; 111 S Ct 818; 112 L Ed 2d 884 (1991). These precedents recognized the difficulty of determining, in a constitutionally fair manner, what portion of the business activity of a multistate business is appropriately considered taxable in each state, and both Courts approved the three-factor apportionment formula adopted by the Michigan statute as the "benchmark" against which other apportionment approaches may be judged. *Id.* at 433 Mich 163 and 498 US 380-381. The three factors included in the Michigan statute provide a good measure for determining where

business activity may be fairly apportioned because "payroll, property, and sales appear in combination to reflect a very large share of the activities by which value is generated." *Id.,* at 498 US 381. (Emphasis deleted.)

As previously stated, § 69 of the Michigan Single Business Tax Act, MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.,* allows an exception to the application of the three-factor formula in certain circumstances. Section 69 acts as a "constitutional 'circuit breaker,'" necessary because taxation of the intrastate business activity of an interstate enterprise presents the potential for violations of the Due Process and Commerce Clauses. *Trinova,* 433 Mich 156.[2] However, "[t]he constitution does not require an exact apportionment, and an apportionment formula will not be judged to be unfair if 'it *may* result in taxation of some [business activity] that did not have its source in the taxing State . . . .'" *Id.* at 158, quoting *Moorman Mfg Co v Bair,* 437 US 267, 272; 98 S Ct 2340; 57 L Ed 2d 197 (1978). Thus, "§ 69 applies only in the most unusual of circumstances" when the taxpayer "demonstrates by 'clear and cogent evidence' that the business activity attributed to this state was 'out of all appropriate proportion' to the business transacted in the state, or has led 'to a grossly distorted result.'" *Id.* at 156-157, 161. See also *Trinova,* 498 US 380.

The Michigan Court reasoned that a taxpayer cannot prevail with an argument that "one element" of intrastate activity was overstated through application of the apportionment formula;

---

[2] The version of § 69 at issue in the *Trinova* cases was different from the amended version of § 69 before us. See *Trinova,* 433 Mich 159, n 20. Nonetheless, the interpretation of constitutional principles in the *Trinova* cases is applicable to the present version of § 69 because the Legislature adopted the constitutional requirements verbatim in fashioning the new provision. See n 20.

"business activity" is much broader than any one element contained within it:

> Under the Single Business Tax Act, "business activity" is defined as encompassing any transfer of property, performance of services, or a combination thereof "with the object of gain, benefit, or advantage." . . . Consequently, to conclude that a taxpayer's business activity is not fairly apportioned because a single component of that activity, when examined by geographical accounting, is not accurately reflected under the statutory apportionment scheme belies the very definition of business activity. [*Trinova,* 433 Mich 161-162.]

Geographical accounting of individual elements of business activity "is subject to manipulation and imprecision." *Id.* at 162. That accounting " 'ignores . . . subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise.' " *Id.,* quoting *Container Corp v Franchise Tax Bd,* 463 US 159, 164-165; 103 S Ct 2933; 77 L Ed 2d 545 (1983). The weaknesses of a state-by-state accounting of individual elements of business activity were " 'precisely [what] . . . justif[ied] resort to formula apportionment in the first place.' " *Trivona,* 433 Mich 162, quoting *Container Corp,* 463 US 181.

Applying these principles to the case before it, the Michigan Supreme Court found that the taxpayer's use of single-element accounting was insufficient to justify § 69 relief from formula apportionment.[3] This was so, even though the taxpayer

---

[3] In contrast to the *Trinova* taxpayer, Corning does not argue that state-by-state accounting of any single element of its tax base warrants § 69 relief. Instead, Corning argues that one of the factors in the three-factor apportionment formula leads to a distorted result. However, the critique of single-element analysis employed by both the Michigan and United States Supreme Courts (see discussion *infra*) is as applicable to Corning's arguments concentrating on a single factor

had extremely strong single-element arguments. Its apportioned compensation was forty times greater than the compensation that state-by-state accounting showed to have been paid to Michigan workers. *Id.* at 163. Apportioned Michigan depreciation was one thousand times greater than "actual" Michigan depreciation. *Id.* Clearly, single-element analysis does not suffice regardless of the strength of the arguments that might be thereby advanced.[4]

Single-element analysis does not suffice because of the "integrated nature" of three-factor apportionment. *Id.* at 162. While the formula may result in an overstatement of one element of business activity, this will be "offset" by an understatement of another element. *Id.* at 164. This necessarily results because the formula's final percentage is an average of three component percentages (prop-

of the apportionment formula as it is to arguments concentrating on a single element of the SBT value-added tax base. The three factors included in the apportionment formula (property, wages, and sales) are closely related to three major elements of the value-added tax base (depreciation, compensation, and income); they "reflect a very large share of the [business] activities by which value is generated." *Trinova,* 498 US 381. (Emphasis deleted.) Weaknesses in single-element accounting of business activity measured by value added gave rise to use of three-factor apportionment. *Trinova,* 433 Mich 162. Accordingly, just as arguments about the distorting effect of a single element of value added are precluded by the "inextricable, codependent" nature of the value-added elements, *Trinova,* 498 US 376, 374-379, so are arguments stressing the distorting effect of one of the factors in the apportionment formula precluded by the "integrated nature of formulary apportionment." *Trinova,* 433 Mich 162. The three factors of the apportionment formula work "in combination," *Trinova,* 498 US 381, and, absent some special circumstance (see footnote 6, *infra*), arguments stressing the distorting effect of one factor will not suffice to require § 69 relief.

[4] The discrepancies between apportioned and "actual" compensation and depreciation are much smaller in the instant case. Corning alleges that its apportioned compensation exceeded its actual Michigan compensation by 470 percent and that its apportioned depreciation exceeded its actual Michigan depreciation by 4,958 percent. Similar numbers for the *Trinova* plaintiff were 4,000 percent (with regard to compensation) and 100,000 percent (with respect to depreciation). *Trinova,* 433 Mich 163.

erty, payroll, and sales). *Id.* at 146, 164. "[I]t will in all cases be larger than at least one of the component percentages unless by fortuity all of the components are equal." *Id.* at 146. Nonetheless, "[w]hen viewed as a whole, . . . the averaged ratios of . . . payroll, property, and sales 'actually reflect a reasonable sense of how [a Michigan taxpayer's business activity is] generated' " *Id.* at 164.

On appeal, the United States Supreme Court employed similar reasoning in determining that the taxpayer had failed in its effort to qualify for constitutionally required relief from three-factor apportionment. The Court first "accept[ed] the premise that apportionment is permitted only [if] precise geographic measurement [of value added] is not feasible . . . ." *Trinova,* 498 US 374. The Court concluded that Michigan had correctly determined that value added was not susceptible to geographic measurement. *Id.* at 374-387. The Michigan value-added tax is not "three separate and independent taxes: a tax on compensation, a tax on depreciation, and a tax on income [or sales]," each of which a taxpayer might "[d]oubtless[ly] . . . identify the location" of amongst various states. *Id.* at 374-375. Instead, the elements of value added are "inextricable, codependent variables." *Id.* at 376. Geographic measurement of value added, resting on the incorrect conception of the SBT as a combination of independent taxes, was thus "impossible" and "apportionment is proper." *Id.* at 379.

The Court then turned to the method of apportionment chosen by Michigan, i.e., the three-factor formula, as applied to the taxpayer before the Court. *Id.* at 379-380. The Court followed the same analysis employed by the Michigan Supreme Court to conclude that the three-factor formula resulted

in a fair apportionment consistent with constitutional requirements. *Id.* at 379-384. Considered "in combination," the three factors generally reflect business activity and thus result in fair apportionment of business activity among states. *Id.* at 381. The taxpayer could not, by concentrating on alleged distortions resulting from the sales factor considered alone, "meet its burden of proving 'by "clear and cogent evidence" ' . . . that the State of Michigan's apportionment provides a distorted result." *Id.* at 384, quoting *Moorman Mfg, supra* at 274.

It is against this background that we must determine whether Corning stated a cognizable claim for § 69 relief from the three-factor formula. Corning argues that its complaint contains factually based allegations that show that § 69 relief from the apportionment formula should be afforded. However, most of these allegations merely state that Corning had relatively little property and a relatively small work force in Michigan, compared to its property and work force in other states. Those facts have already been accounted for by the apportionment formula, resulting, to Corning's benefit, in low ratios for the property and wage factors. The complaint also alleges that the workers employed by Corning and the property owned or rented by Corning in Michigan during 1988 were all sales-related and were not involved in product manufacture, formulation or design, or research or development.

Proceeding from these facts, the complaint contains other allegations that Corning contends were sufficient to withstand a motion for summary disposition:

> (1) [Corning's sales] employees in Michigan did not add value to the products which [Corning] manufactured elsewhere and sold everywhere.

(2) [Corning's] maintenance of leased real and personal property [for sales purposes] . . . added little value to the products which [Corning] manufactured elsewhere and sold everywhere.

(3) [Corning's] production operations, all of which were located outside the state of Michigan at several sites, added almost exclusively all of the value to [Corning's] products . . . . [T]he totality of [Corning's] research and development operations which added value to [Corning's] products were undertaken at a location outside Michigan.

(4) [T]he customers of [Corning's] . . . products in Michigan did not determine or enhance the direction of [Corning's] process in designing, producing, researching, developing[,] and distributing these products.

(5) [Corning's] Michigan sales were not an essential component of [Corning's] overall economic strategies, nor did they constitute an integral part of value added on a company-wide basis.

Corning argues that these allegations were drafted to meet requirements established by the United States Supreme Court decision in *Trinova* and that they are legally sufficient to state a claim under that precedent. We conclude to the contrary that the United States Supreme Court's *Trinova* case precludes an action based on these allegations as a matter of law.

Corning asserts that the quoted allegations are "facts." However, they are really conclusions that Corning believes are supported by the surrounding facts (regarding the extent and nature of its Michigan and non-Michigan activities). Under *Trinova,* the alleged facts cannot support these conclusions. The United States Supreme Court specifically determined that "sales . . . do have a profound impact upon the amount of an enterprise's value added" and that "the . . . argument that sales do not contribute to value added . . . cannot support

a claim" that business activity was wrongly attributed to a state. 498 US at 382-383. This is in direct contravention to Corning's conclusions 1, 2, and 3 above. The Supreme Court specifically concluded that "there can be little doubt that requirements of the Michigan market determine[] the direction of [a multistate business'] design, production, and distribution process," directly contrary to Corning's conclusion 4. *Id.* at 376. The Supreme Court specifically reasoned that "[w]e can and must assume that Michigan sales were a part of the company's essential economic strategies and were an integral part of company-wide value added," in direct contrast to Corning's conclusion 5. *Id.*

These determinations were not based on the facts specific to the case before the *Trinova* Court.[5] Instead they were an inevitable result of the Court's analysis regarding the integrated nature of the SBT itself. "It distorts the tax both in application and theory to confine value added consequences of the Michigan market solely to the labor and capital expended by the resident sales force." *Id.* at 376.

The *Trinova* opinions amply support the grant of summary disposition against Corning for failure to state a claim. Summary disposition was appropriate in favor of defendant because, even if the facts are assumed to be as Corning pleads, the *Trinova* precedents preclude § 69 relief. Corning's claim is so clearly unenforceable as a matter of

---

[5] Corning argues that the *Trinova* cases merely established a new standard regarding the factual allegations necessary to state a claim for § 69 relief and that the *Trinova* taxpayer was given further opportunity to develop a factual record under that standard. We disagree. Corning's argument is based on the Michigan Supreme Court's decision, affirmed by the United States Supreme Court, which concludes with a remand to the Court of Claims "for further proceedings consistent with this opinion." *Trinova,* 433 Mich 167. However, Justice LEVIN's separate opinion makes clear that this remand was not "for a hearing . . . on the factual issues adverted to . . . in the opinion of the Court." *Id.*

law that no development of the facts alleged[6] could possibly justify a right to recovery. *Brown v Drake-Willock Int'l, Ltd,* 209 Mich App 136, 143; 530 NW2d 510 (1995).

In sum, Corning has not stated a claim on which, following the *Trinova* cases, any relief can be granted. None of the facts pleaded could support a determination that the three-factor apportionment led to "a grossly distorted result" that is "out of all . . . proportion" to Corning's actual business activity in Michigan. Thus, relief under § 69 would have been inappropriate. The trial court properly granted summary disposition for defendant.

We affirm.

---

[6] Alleging other facts, a taxpayer might well state a claim for § 69 relief. For example, the United States Supreme Court considered the SBT in its application to a taxpayer that was considered to be "a unitary enterprise" and a "single unitary business." *Trinova,* 498 US 376, 378. It seems from the Court's analysis that a unitary business is one in which sales, wages, and property are related; wages are paid and property is employed for the purpose of producing goods or services sold. If sales, property, and wages are not related, use of the three-factor formula could lead to a "grossly distorted result." For example, that might be the case if a business had significant property holdings in Michigan for investment purposes only, totally unrelated to its production and sale of goods outside Michigan. The Supreme Court also notes that "the one-third weight given to each of the three factors—payroll, property, and sales—is not a precise apportionment for every case . . . ." *Trinova,* 498 US 381. There may be factual situations where a business' property, payroll, or sales is minuscule compared to the other two factors and where the equal weight assigned to each factor by the formula leads to a grossly distorted result.