206 Mich. App. 222 (1994)
521 N.W.2d 19
CONSOLIDATED ALUMINUM CORPORATION
v.
DEPARTMENT OF TREASURY
Docket No. 150190.
Michigan Court of Appeals.
Submitted February 1, 1994, at Detroit.
Decided July 18, 1994, at 9:00 A.M.
Van Til & Associates (by Lawrence R. Van Til), for the petitioner.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and Russell E. Prins and Terry P. Gomoll, Assistant Attorneys General, for the respondent.
Before: SHEPHERD, P.J., and MARILYN KELLY and J.H. GILLIS, JR.,[*] JJ.

AFTER REMAND
SHEPHERD, P.J.
Petitioner, Consolidated Aluminum Corporation (Conalco), appeals as of right from a July 26, 1991, judgment of the Tax Tribunal, which reinstated an earlier tribunal judgment *225 of November 13, 1986, which, in turn, affirmed a March 29, 1982, assessment of tax deficiency by respondent, the Department of Treasury, against Conalco. This Court considered the November 13, 1986, judgment in Docket No. 96966 and, in an order issued on November 17, 1989, remanded the case to the Tax Tribunal for reconsideration in light of the Michigan Supreme Court's decision in Trinova Corp v Dep't of Treasury, 433 Mich 141; 445 NW2d 428 (1989), which the United States Supreme Court affirmed in Trinova Corp v Michigan Dep't of Treasury, 498 US 358; 111 S Ct 818; 112 L Ed 2d 884 (1991). The tribunal's subsequent July 26, 1991, decision on remand is the subject of this appeal. We affirm.
I
FACTS AND PROCEEDINGS
Conalco is a foreign corporation subject to Michigan's Single Business Tax Act (SBTA), MCL 208.1 et seq.; MSA 7.558(1) et seq. Conalco manufactures and sells aluminum products in Michigan and elsewhere. During the period relevant to this appeal  i.e., for the tax years 1976 through 1979, inclusive  Conalco owned a sixty-six percent interest in a company known as Ormet. Ormet was a separate corporation, which produced raw aluminum from bauxite ore. Ormet served Conalco[1] as a "cost company." That is, Ormet sold sixty-six percent of its output to Conalco at cost.[2] Conversely, Conalco was responsible for sixty-six percent of Ormet's operating costs, including capital costs and interest expenses.
Because of Ormet's unique character, Conalco *226 consolidated sixty-six percent of Ormet's operations into its own financial statements for the tax years at issue. Conalco calculated its tax base under § 9 of the SBTA, MCL 208.9; MSA 7.558(9), using these consolidated financial statements. However, Conalco did not add back any interest expenses to its tax base as required by § 9(4)(f), MCL 208.9(4)(f); MSA 7.558(9)(4)(f), because, in its opinion, the majority of the interest expenses were attributable to collateralized debt on property located outside Michigan.
After conducting an audit of Conalco's 1976-79 tax returns, respondent concluded that Ormet should be excluded from Conalco's financial statements because it was a separate taxable entity. As a result, this exclusion of Ormet's financial information prevented Conalco from deducting certain expenses related to Ormet's operating costs. Respondent also added back all interest expenses to Conalco's tax base, including those interest expenses related to Ormet. Further, a capital acquisition deduction was allowed only for Michigan assets.
Respondent recalculated Conalco's tax base, then applied the three-factor apportionment formula of § 45, MCL 208.45; MSA 7.558(45), to determine Conalco's Michigan tax base. The recalculation resulted in an increase in Conalco's Michigan tax base, and, thus, an increase in single business tax. Respondent assessed Conalco an additional $156,843.51, including tax and interest.[3]
Conalco filed a petition of appeal with the Tax Tribunal, which affirmed the assessment. In an opinion and judgment dated November 13, 1986, the tribunal held that Ormet was properly excluded from Conalco's tax base because they were separate entities. In particular, the tribunal noted that Conalco did not meet the threshold of eighty *227 percent ownership of Ormet in order to be considered an "affiliated group"[4] under § 3(1), MCL 208.3(1); MSA 7.558(3)(1). The tribunal also held that Conalco's interest expenses were properly added back to Conalco's tax base because Conalco treated the interest as an expense rather than capitalized interest on its financial statements.
As noted above, this Court considered the 1986 judgment in Docket No. 96966, and remanded the matter to the tribunal for reconsideration in light of the Michigan Supreme Court's decision in Trinova, supra. On remand, in an opinion and judgment dated July 26, 1991, the tribunal adopted its prior opinion and judgment of November 13, 1986. Conalco now appeals as of right from the tribunal's judgment of July 26, 1991.
II
STANDARD OF REVIEW
On appeal, in the absence of fraud, our review of a decision of the Tax Tribunal is limited to whether the tribunal made an error of law or adopted a wrong legal principle. Gillette Co v Dep't of Treasury, 198 Mich App 303, 306; 497 NW2d 595 (1993). We will not disturb the factual findings of the Tax Tribunal when those findings are supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; Gillette, supra.
III
THE SINGLE BUSINESS TAX ACT
Michigan's Single Business Tax Act imposes a *228 value added tax (VAT) upon business activity in Michigan. Wismer & Becker Contracting Engineers v Dep't of Treasury, 146 Mich App 690, 696; 382 NW2d 505 (1985). Section 31 of the SBTA, MCL 208.31; MSA 7.558(31), imposes a "specific tax of 2.35% upon the adjusted tax base of every person with business activity in this state which is allocated or apportioned to this state."[5] A "person" is defined under § 6(1) of the SBTA, MCL 208.6(1); MSA 7.558(6)(1), as follows:
"Person" means an individual, firm, bank, financial institution, limited partnership, copartnership, partnership, joint venture, association, corporation, receiver, estate, trust, or any other group or combination acting as a unit.
The SBT is calculated by starting with a person's federal taxable income, MCL 208.3(3); MSA 7.558(3)(3), and then making certain additions and subtractions according to § 9 of the act, MCL 208.9; MSA 7.558(9). Trinova, 433 Mich 150-151. Our Supreme Court in Trinova described these adjustments as follows:
Common adjustments to business income include additions to reflect the business consumption of labor and capital. Those include adding back compensation, depreciation, dividends, and interest paid by the taxpayer to the extent deducted from federal taxable income. Common deductions from business income include dividends, interest, and royalties received by the taxpayer to the extent included in federal taxable income. This income is deducted for the purpose of value added computation because it does not result from capital expenditure by the taxpayer. [Id.; emphasis in original.] *229 Of particular relevance to this appeal, subsection 9 of § 9 provides for an adjustment for gain or loss attributable to other entities, as follows:
To the extent included in federal taxable income, add the loss or subtract the gain from the tax base that is attributable to another entity whose business activities are taxable under this act or would be taxable under this act if the business activities were in this state. [MCL 208.9(9); MSA 7.558(9)(9).]
Once the § 9 tax base is determined, then the "apportioned" or Michigan tax base is determined by applying the three-factor apportionment formula found in § 45, as follows:[6]
All of the tax base, other than the tax base derived principally from transportation, financial, or insurance carrier services or specifically allocated, shall be apportioned to this state by multiplying the tax base by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3. [MCL 208.45; MSA 7.558(45).]
The property,[7] payroll,[8] and sales[9] factors are themselves a fraction representing the proportion *230 of Michigan property, payroll, and sales in relation to property, payroll, and sales everywhere. Wismer & Becker, supra at 699. In algebraic form, the formula for the Michigan tax base would look as follows:
 MICH MICH MICH
 PROPERTY PAYROLL SALES
 + +
 __________ _________ _______
 TOTAL TOTAL TOTAL
 PROPERTY PAYROLL SALES
 TAX BASE x __________________________________________ = MICH TAX
Section 69, MCL 208.69; MSA 7.558(69), provides relief to a taxpayer when the § 45 apportionment formula results in a Michigan tax base that is "out of all appropriate proportion to the taxpayer's intrastate business activity or has led to a grossly distorted result." Trinova, 433 Mich 167. Section 69 has been described as a "constitutional circuit breaker," meaning that if the apportionment provisions of the SBTA result in an unconstitutional tax, then § 69 will afford a taxpayer relief, saving the SBTA. Trinova, 498 US 371-372. For the period relevant to this appeal, § 69 provided as follows:
(1) If the apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may *231 petition for or the commissioner may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
(a) Separate accounting.
(b) The exclusion of any 1 or more of the factors.
(c) The inclusion of 1 or more additional factors which will fairly represent the taxpayer's business activity in this state.
(d) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's tax base.
(2) An alternate method will be effective only if it is approved by the commissioner.
Once the Michigan tax base has been determined, further adjustments are allowed in the form of exemptions under § 35, MCL 208.35; MSA 7.558(35), and deductions and additions under § 23, MCL 208.23; MSA 7.558(23), for the acquisition of tangible assets. Then, under § 31, MCL 208.31; MSA 7.558(31), the adjusted Michigan tax base is multiplied by 2.35 percent to determine the amount of SBT liability.[10]
IV
APPLICATION OF THE SBTA TO CONALCO
A
First, Conalco argues that all of Ormet's financial information should be included in the calculation of Conalco's tax base under the SBTA. Conalco argues that Ormet's unitary business nature requires consolidation of its financial information under § 69. In the alternative, Conalco argues that if Ormet is to be excluded, it must be excluded totally.
*232 Respondent argues that this Court's decision in Wismer & Becker, supra, requires the exclusion of Ormet from Conalco's tax base because Ormet is a joint venture and is organized as a separate corporation. Respondent argues that § 69 does not permit the consolidation of two taxpayers' apportioned tax bases. We agree with respondent that Ormet's financial information should be excluded from Conalco's tax base.
Initially, there can be no doubt that Conalco's interest in Ormet is that of a joint venture. There is no other appropriate category under the SBTA in which to place Ormet; and, in fact, Conalco's own representatives have referred to Ormet as a joint venture. Conalco and Ormet do not qualify as an "affiliated group" under § 3(1) (which might permit the filing of a consolidated return under § 77, MCL 208.77; MSA 7.558[77]) because there is no dispute that Conalco does not own or control at least eighty percent of the voting capital stock of Ormet. Consequently, as a joint venture, Ormet is a separate "person" under § 6(1).
Once Ormet is recognized as a joint venture, this issue is controlled by this Court's decision in Wismer & Becker. In Wismer & Becker, supra, this Court was faced with a similar question involving a foreign corporation's interest in various out-of-state joint ventures. Therein, the taxpayer attempted to include its share of property, payroll, and sales of the out-of-state joint ventures in the total property component of the § 45 apportionment formula. Wismer & Becker, supra at 695. We concluded in Wismer & Becker that the taxpayer must exclude its interest in the joint ventures when calculating its SBT, as follows:
Section 69 allows a taxpayer to petition for, or the Tax Commissioner to require, the use of various *233 methods of apportionment, including separate accounting, where the Chapter 3 formulary apportionment does not fairly represent the extent of the taxpayer's business activity in this state. MCL 208.69; MSA 7.558(69). If the unitary concept has any relevance at all within the framework of the SBTA, it is only as a tool to determine whether a taxpayer should utilize the exceptional relief of separate accounting under § 69. It has absolutely no relevance to the determination of whether interdependent business entities are one or more taxpayers under the act. That determination expressly has been made by the Legislature in the act. As discussed above, the act does not allow petitioner to treat itself and its joint ventures as a single taxpayer either in calculating its tax base under § 9 or in apportioning its tax base under § 45. On the contrary, the act recognizes a joint venture as a separate and distinct taxpayer subject to the single business tax if conducting business in Michigan regardless of whether the joint venture is part of a unitary business composed of other taxpayers. Petitioner would have this Court read into the act an exception for unitary businesses that simply does not exist.
Consistent with our interpretation, § 9(9) excludes from the tax base income or loss from any other entity (including joint ventures) which is subject to the tax or which would be subject to the tax if conducting business in the state. MCL 208.9(9); MSA 7.558(9)(9). [Id. at 702-703.]
In the present case, as in Wismer & Becker, the joint venture should be excluded from the principal taxpayer's tax base because the joint venture either is or would be subject to the SBTA if conducting business in the state. MCL 208.9(9); MSA 7.558(9)(9). Although the present case is somewhat distinguishable because the principal taxpayer desires to include the joint venture in the original calculation of the tax base rather than merely at the apportionment stage, this minor distinction is *234 immaterial to the underlying holding of Wismer & Becker that a joint venture is a separate entity under the SBTA. Id. at 701-702. Incidentally, this Court in Wismer & Becker, supra at 703, stated that consolidation would be inappropriate "either in calculating its tax base under § 9 or in apportioning its tax base under § 45."[11]
Conalco's alternative argument that Ormet either should be included totally or excluded totally from its tax base emphasizes its real economic interest in Ormet, but provides no direct challenge to respondent's accounting method of excluding Ormet. On this point, Conalco argues that separation of the two entities' financial statements artificially inflates Conalco's net income and, thus, its tax base. This is because Conalco buys aluminum from Ormet at cost, while paying a share of Ormet's operating expenses. Although this argument concerning the real economic consequences of operating a cost company raises interesting and challenging questions from a theoretical standpoint, the statutory mechanics of the SBTA nevertheless require that Conalco and Ormet be treated as separate entities. Wismer & Becker remains controlling. Further, because Conalco has not specified  either below or on appeal  how to allocate expenses that it believes are "attributable" to Ormet, this Court is not in a position to review the propriety of respondent's method of "wholly" excluding Ormet. Rutherford v Dep't of Social Services, 193 Mich App 326, 330; 483 NW2d 410 (1992). Thus, we conclude that the Tax Tribunal correctly affirmed the assessment, which was based in part upon respondent's exclusion of Ormet from Conalco's tax base.
*235 B
Having determined that Ormet's financial information should be excluded from Conalco's tax base when computing SBT liability, we next address the question of interest expenses. Here, Conalco argues that its interest expenses should be allocated geographically before being added to the tax base under § 9(4)(f), MCL 208.9(4)(f); MSA 7.558(9)(4)(f). Conalco argues that this geographic apportionment would more accurately reflect its Michigan business activity because most of its interest expenses are attributable to collateralized loans on property located outside Michigan. In essence, Conalco seeks to use a one-factor apportionment formula based on the geographic location of the financed property.
In support of its decision to affirm the assessment, the Tax Tribunal emphasized that Conalco's proposal would circumvent the three-factor apportionment formula of § 45. Further, the tribunal noted that Conalco had included these amounts as expenses rather than capitalized interest in its financial statements. On appeal, Conalco argues that § 69 should be utilized to permit the geographic apportionment of interest expenses. Further, in response to the tribunal's decision, Conalco argues that the prior treatment of the interest as an expense for accounting purposes does not foreclose its geographic apportionment because the financed property giving rise to the interest expense is recognized as a measure of value added through the inclusion of the property factor in the apportionment formula of § 45.
Ordinarily, interest expenses that are deducted for purposes of calculating federal income tax are added back to a taxpayer's tax base for purposes of *236 calculating Michigan's SBT. MCL 208.9(4)(f); MSA 7.558(9)(4)(f). As noted above, the tax base is then adjusted to reflect Michigan activity by application of the three-factor apportionment formula of § 45. Relief from the three-factor apportionment formula of § 45 is afforded under § 69 only when the business activity attributed to the state is out of all appropriate proportion to intrastate business activity or has led to a grossly distorted result. Trinova, 433 Mich 167, and 498 US 380.
We believe that this issue is controlled by the United States Supreme Court's decision in Trinova, supra. In Trinova, a foreign corporation doing business in Michigan sought to
dissect the tax base as if the SBT were three separate and independent taxes: a tax on compensation, a tax on depreciation, and a tax on income, each apportioned. Trinova insists that compensation and depreciation can be located and can be separated from the total value added calculation. [498 US 374-375.]
Thus, in Trinova, the taxpayer attempted to apportion geographically two of the components that must be added back to the tax base under § 9, i.e., compensation under § 9(5), and depreciation under § 9(4)(c).
Similarly, in the present case, Conalco seeks to apportion geographically the interest expense component, which is ordinarily included in the tax base under § 9(4)(f). This approach was expressly rejected in Trinova when the Court concluded that the individual tax base components of § 9 "are not independent variables to be adjusted without reference to each other." 498 US 376. Rather, the various tax base components must be added together, and then the total tax base is to be apportioned under § 45.
*237 Conalco's request for relief under § 69 must fail because Conalco's arguments focus upon geographic apportionment of these interest expenses, without making the requisite showing that the total business activity attributed to Michigan after application of the three-factor formula of § 45 is out of all appropriate proportion to actual business transacted in this state. Trinova, 433 Mich 167, and 498 US 380. As such, Conalco has not demonstrated a need for the "constitutional circuit breaker" of § 69 relief. Trinova, 498 US 371-372. The Tax Tribunal correctly affirmed the assessment, which was based in part upon respondent's inclusion of Conalco's interest expenses in the tax base.
C
Next, we briefly address Conalco's claim of entitlement to a capital acquisition deduction under § 23(c) for capital acquisitions everywhere, as opposed to a smaller deduction for capital acquisitions only in Michigan. Conalco made this argument in its brief on appeal, but abandoned the issue at oral argument, presumably in light of our Supreme Court's recent decision in Caterpillar, Inc v Dep't of Treasury, 440 Mich 400; 488 NW2d 182 (1992), which upheld the constitutionality of § 23. In accordance with Caterpillar, supra, we find that this issue is without merit.
D
Conalco makes a separate argument that to the extent that any portion of the assessment may be unconstitutional, respondent may not impose an unconstitutional tax. It is obvious that respondent may not impose an unconstitutional tax. However, *238 Conalco has not demonstrated how the assessment is unconstitutional. In accordance with our disposition of the preceding issues, this issue is without merit.
E
Finally, Conalco raises a number of issues concerning the sufficiency of the Tax Tribunal's findings. In particular, Conalco argues that the Tax Tribunal's decision made no direct findings of fact, made conclusions of law without citing legal authority, and failed to address the substantive issues raised. Further, Conalco argues that it was entitled to have all factual issues resolved in its favor because respondent presented no evidence at the hearing before the Tax Tribunal. We find these issues to be without merit.
The fact that respondent did not present evidence at the hearing to support the assessment does not, in itself, mandate reversal of the Tax Tribunal's decision. Gillette, supra at 317. In a case such as this, which involves primarily questions of law, the Tax Tribunal may rely upon the evidence presented by the taxpayer when deciding to uphold an assessment.
In the present case, the Tax Tribunal specifically adopted and incorporated by reference portions of the hearing officer's proposed judgment. The hearing officer's proposed judgment is replete with numerous citations of legal authority. To the extent that the Tax Tribunal disagreed with the proposed judgment, it made separate findings of fact and conclusions of law, citing appropriate legal authority. As such, we will not disturb the Tax Tribunal's decision because it was based upon competent, material, and substantial evidence on the whole record, and was in accordance with the law. Gillette, supra at 306; Const 1963, art 6, § 28.
*239 V
CONCLUSION
In summary, we hold that Ormet's financial information should not be included in the calculation of Conalco's tax base because the two corporations are separate entities. Further, Conalco's total interest expenses must be included in its tax base without any prior geographic apportionment. Conalco is only entitled to a capital acquisition deduction for Michigan acquisitions. The tax assessment by respondent was constitutional; and the Tax Tribunal's decision was in accordance with the law and was supported by competent, material, and substantial evidence on the whole record.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] Revere Copper and Brass, not a party to this appeal, held the remaining thirty-four percent interest in Ormet.
[2] Ormet's corporate charter precluded it from operating at a profit.
[3] Assessment No. B647924.
[4] If Conalco and Ormet were found to be an affiliated group under MCL 208.3(1); MSA 7.558(3)(1), then they might be permitted to file a consolidated return according to MCL 208.77; MSA 7.558(77).
[5] MCL 208.31; MSA 7.558(31) recently has been amended, replacing the word "which" with "that."
[6] MCL 208.45; MSA 7.558(45) was amended following the period relevant to this appeal.
[7] Section 46 defines the property factor as follows:

The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented in this state during the tax year and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented during the tax year. [MCL 208.46; MSA 7.558(46).]
[8] Section 49 defines the payroll factor as follows:

The payroll factor is a fraction, the numerator of which is the total wages paid in this state during the tax year by the taxpayer and the denominator of which is the total wages paid everywhere during the tax year by the taxpayer. For the purposes of this chapter only, "wages" means wages as defined in section 3401 of the internal revenue code. [MCL 208.49; MSA 7.558(49).]
[9] Section 51 defines the sales factor as follows:

The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer everywhere during the tax year. [MCL 208.51; MSA 7.558(51).]
[10] Sections 36 through 39 of the SBTA provide credits to offset the amount of tax liability.
[11] Also consistent with our opinion, § 78, MCL 208.78; MSA 7.558(78), prohibits consolidation of the tax base or apportionment factors of two or more corporations except as expressly provided in § 77 for affiliated groups.