# STATE OF MICHIGAN

# COURT OF APPEALS

---

AK STEEL HOLDING CORPORATION,

        Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee/Cross-Appellant.

FOR PUBLICATION
February 25, 2016
9:00 a.m.

No. 327175
Court of Claims
LC No. 13-000180-MT

---

JOHNSON MATTHEY, INC.,

        Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee/Cross-Appellant.

No. 327251
Court of Claims
LC No. 11-000067-MT

---

EMCO ENTERPRISES, INC.,

        Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee/Cross-Appellant.

No. 327313
Court of Claims
LC No. 12-000152-MT

---

CARGILL MEAT SOLUTIONS
CORPORATION,

        Plaintiff-Appellant/Cross-Appellee,

-1-

v                                          No. 327314
                                           Court of Claims
DEPARTMENT OF TREASURY,                    LC No. 12-000110-MT

        Defendant-Appellee/Cross-
        Appellant.

WATTS REGULATOR COMPANY,

        Plaintiff-Appellant/Cross-Appellee,

v                                          No. 327315
                                           Court of Claims
DEPARTMENT OF TREASURY,                    LC No. 13-000040-MT

        Defendant-Appellee/Cross-
        Appellant.

SLBP HOLDINGS CORPORATION,

        Plaintiff-Appellant/Cross-Appellee,

v                                          No. 327316
                                           Court of Claims
DEPARTMENT OF TREASURY,                    LC No. 13-000003-MT

        Defendant-Appellee/Cross-
        Appellant.

RENEWAL BY ANDERSON CORPORATION,

        Plaintiff-Appellant/Cross-Appellee,

v                                          No. 327317
                                           Court of Claims
DEPARTMENT OF TREASURY,                    LC No. 13-000002-MT

        Defendant-Appellee/Cross-
        Appellant.

ANDERSON WINDOWS, INC.,

Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee/Cross-Appellant.

No. 327318
Court of Claims
LC No. 12-000153-MT

---

SID TOOL COMPANY, INC.,

    Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee/Cross-Appellant.

No. 327319
Court of Claims
LC No. 13-000005-MT

---

MARTIN SPROCKET & GEAR, INC.,

    Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee/Cross-Appellant.

No. 327320
Court of Claims
LC No. 12-000091-MT

---

UNITED STATIONERS SUPPLY COMPANY,

    Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee/Cross-Appellant.

No. 327321
Court of Claims
LC No. 12-000057-MT

---

RODALE, INC.,

      Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee/Cross-Appellant.

No. 327322
Court of Claims
LC No. 12-000048-MT

---

GOODYEAR TIRE & RUBBER COMPANY,

      Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee/Cross-Appellant.

No. 327323
Court of Claims
LC No. 12-000047-MT

---

LESLIE CONTROLS, INC.,

      Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee/Cross-Appellant.

No. 327324
Court of Claims
LC No. 12-000055-MT

---

HOKE, INC.,

      Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee/Cross-

No. 327325
Court of Claims
LC No. 12-000054-MT

Appellant.

---

SPENCE ENGINEERING, INC.,

    Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee/Cross-
    Appellant.

No. 327326
Court of Claims
LC No. 12-000052-MT

---

CIRCOR ENERGY PRODUCTS, INC.,

    Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee/Cross-
    Appellant.

No. 327327
Court of Claims
LC No. 12-000053-MT

---

CIRCOR AEROSPACE, INC.,

    Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee/Cross-
    Appellant.

No. 327328
Court of Claims
LC No. 12-000056-MT

---

GTECH CORPORATION,

    Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

No. 327329
Court of Claims
LC No. 12-000050-MT

Defendant-Appellee/Cross-
Appellant.

---

CAMBREX CHARLES CITY, INC.,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

No. 327330
Court of Claims
LC No. 13-000060-MT

---

CAMBREX CHARLES CITY, INC.,

Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee/Cross-
Appellant.

No. 327331
Court of Claims
LC No. 12-000044-MT

---

EMC CORPORATION,

Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee/Cross-
Appellant.

No. 327333
Court of Claims
LC No. 13-000048-MT

---

EMC CORPORATION,

Plaintiff-Appellant/Cross-Appellee,

v

No. 327334
Court of Claims

-6-

Defendant-Appellee/Cross-
Appellant.

---

Before:  RIORDAN, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

## I.  INTRODUCTION

In these 23 consolidated appeals,[1] the plaintiffs are taxpayers who respectively appeal as of right orders granting summary disposition in each case to defendant, the Michigan Department of Treasury.  Each appeal raises common issues challenging the Court of Claims' holding that the mandatory apportionment provision of the Single Business Tax Act ("SBTA"), MCL 208.1 *et seq.*,[2] impliedly repealed a provision of Michigan's enactment of the Multistate Tax Compact ("the Compact"), MCL 205.581 *et seq.*,[3] which allowed multistate taxpayers to apportion their tax base using an equally weighted, three-factor formula set forth in the Compact.  Plaintiffs further contend that an implied repeal of the Compact's election provision violates the terms of the Compact—which, according to plaintiffs, was binding on subsequent legislatures—and violates state and federal constitutional provisions.  Additionally, in Docket No. 327251, plaintiff Johnson Matthey, Inc. ("Johnson Matthey") also argues that it was entitled to apportion its Michigan Business Tax ("MBT") base pursuant to the Compact apportionment formula, and that the retroactive repeal of the Compact by 2014 PA 282 violated the terms of the Compact and various constitutional provisions.

In cross-appeals in all of the cases except for *Cambrex Charles City, Inc v Dep't of Treasury* (Docket No. 327330), and as alternative grounds for affirmance in all of the cases, defendant argues that the SBT is not an income tax under the apportionment election provision of the Compact and that the retroactive repeal of the Compact by 2014 PA 282 barred plaintiffs from asserting their respective SBT refund claims.

Because we conclude that the SBTA did not impliedly repeal the Compact apportionment election provision, we reverse and remand for further proceedings consistent with this opinion.

---

[1] *AK Steel Holding Corp v Dep't of Treasury*, unpublished order of the Court of Appeals, entered November 24, 2015 (Docket Nos. 327175 *et al*).

[2] The entire SBTA was repealed by 2006 PA 325 and replaced with the Michigan Business Tax Act ("MBTA").  All subsequent references to the SBTA, MCL 208.1 et seq., shall incorporate this repeal.

[3] The Compact was expressly and retroactively repealed by 2014 PA 282, effective beginning January 1, 2008.  All subsequent to the Compact should similarly incorporate this later explicit repeal.

## II. HISTORICAL BACKGROUND AND PROCEDURAL POSTURE[4]

Plaintiffs in the present cases are claiming SBT refunds for at least one tax year between 2005 and 2007. In particular, plaintiffs seek to reduce their SBT liability for the tax years at issue by apportioning their income through the equally weighted, three-factor apportionment formula provided in the Compact rather than the three-factor formula provided in the SBTA, which weighted the sales factor of the formula more heavily. As the Court of Claims stated, the principal issue in these cases is "whether the SBT apportionment formula for the tax years in question is mandatory or whether an SBT taxpayer may elect to apportion its tax base to Michigan using the Compact's equally weighted, three-factor apportionment formula."

### A. THE SBTA

From January 1, 1976, until its repeal effective December 31, 2007, the SBTA governed the taxation of business activity in Michigan. See 1975 PA 228; 2006 PA 325. Under the SBTA, a tax base was calculated by beginning with a business's federal taxable income and then adding back compensation, depreciation, and other factors, as well as making other adjustments. See *Trinova Corp v Mich Dep't of Treasury*, 498 US 358, 366-367; 111 S Ct 818; 112 L Ed 2d 884 (1991) (*Trinova II*). Throughout its history, the SBT was apportioned using a three-factor formula consisting of payroll, property, and sales. As the Court of Claims explained in its opinion, this formula originally weighted the three factors equally, in accordance with previous business taxes in Michigan and the nearly universal practice of other states at the time. However, in later years, many states moved away from an equally weighted, three-factor formula by more heavily weighting the sales factor. Following this trend, the Michigan Legislature abandoned uniform apportionment and began to more heavily weight the sales factor in 1991. See 1991 PA 77. Subsequent amendments continued to weigh the sales factor even more heavily. For tax years 1999 through 2005, the sales factor was weighted at 90%, and for 2006 and 2007, the sales factor was weighted at 92.5%. See 1995 PA 283; 2005 PA 295; MCL 208.45a(1)(c), (2)(c), repealed by 2006 PA 325.

### B. THE COMPACT

The Compact originally was adopted by seven states in 1967. The Michigan Legislature adopted the Compact provisions effective in 1970. See 1969 PA 343. While Congress never approved the Compact, it was upheld against constitutional challenges. See *US Steel Corp v Multistate Tax Comm*, 434 US 452; 98 S Ct 799; 54 L Ed 2d 682 (1978). The Compact established the Multistate Tax Commission ("the Commission"), but each state remained free to adopt or reject the Commission's rules and regulations and remained free to withdraw from the Compact at any time. See *id*. at 473. Most relevant to this appeal, Article IV of the Compact set forth a three-factor apportionment formula that equally weighted property, payroll, and sales factors. MCL 205.581, Art IV(9). Article III of the Compact provided that a taxpayer subject to

---

[4] In summarizing the historical development of the law in Michigan, we rely heavily on the Court of Claims' comprehensive and well-written recitation of the relevant legal background in its opinion issued in *EMCO Enterprises, Inc v Dep't of Treasury* (Docket No. 327313).

an income tax "in two or more party states may elect to apportion and allocate his income in the manner provided by the laws of such states . . . without reference to this compact, or may elect to apportion and allocate in accordance with article IV." MCL 205.581, Art III(1).

On May 25, 2011, the Michigan Legislature passed 2011 PA 40, which amended the Compact so that a multistate taxpayer subject to the MBTA or the income tax act of 1967 could not elect the Compact apportionment formula beginning January 1, 2011. Then, on September 11, 2014, our Legislature enacted 2014 PA 282, which retroactively repealed the Compact provisions effective January 1, 2008, and mandated the use of a single sales-factor apportionment formula for the purpose of calculating the MBT and the corporate income tax. As the Court of Claims explained in *EMCO*:

> PA 282 thus amended the MBT to express the "original intent" of the Legislature with regard to (1) the repeal of the Compact provisions, (2) application of the MBT's apportionment provision under MCL 208.1301, and (3) the intended effect of the Compact's election provision under MCL 205.581. The effect of the amendments, as written, retroactively eliminates a taxpayer's ability to elect a three-factor apportionment formula in calculating tax liability under both the MBT and the [corporate income tax].

C. THE COURT OF CLAIMS' DECISION

In one of the present appeals, *EMCO Enterprises, Inc v Dep't of Treasury* (Docket No. 327313) ("*EMCO*"), the Court of Claims issued a 29-page opinion addressing the plaintiff's claims and granting summary disposition in favor of defendant pursuant to MCR 2.116(I)(2). In summarizing its decision, the Court of Claims stated:

> The Court, in fulfilling its duty to ascertain and apply the intent of the Legislature, finds that the taxpayer is required to use the apportionment formulas mandated under the SBTA for the tax years in question, and is not entitled to elect a different apportionment formula under the Compact. Though the SBT is an income tax within the meaning of the Compact, future legislatures were not bound by the policies of the legislature that enacted 1969 PA 343. The purpose of state tax uniformity as embedded in both the Compact's apportionment elective provision by the 1969 legislature, and the SBTA's equally weighted, three-factor apportionment formula as originally enacted by the 1975 legislature, is not consistent with the purpose of later amendments made to apportionment formulas by the Legislature. Under traditional rules of statutory construction, the apportionment formula under the SBTA for the tax years in question must control.

More specifically, in its *EMCO* opinion, the Court of Claims concluded that the Compact was advisory and did not bind future legislatures, that the Compact was not a binding contract under Michigan law, and that the Legislature was therefore free to mandate the use of apportionment formulas that deviated from the formula set forth in the Compact. The court further determined that the SBTA in effect during the tax years at issue conflicted with the Compact apportionment election provision by requiring the use of a different apportionment formula from that provided in the Compact, and that these provisions could not be harmonized. Thus, the Court of Claims

concluded that the SBTA apportionment provision was controlling and had impliedly repealed the Compact's apportionment election provision. Further, the court rejected arguments that denying plaintiffs the right to elect the Compact's equally weighted, three-factor apportionment formula violated the Commerce and Due Process Clauses of the United States Constitution.

In the remaining appeals, the Court of Claims entered essentially identical orders in each case granting summary disposition in favor of defendant pursuant to MCR 2.116(I)(1) on the basis of the reasoning in the *EMCO* opinion.[5]

## III. STANDARD OF REVIEW

A trial court's decision to grant summary disposition pursuant to MCR 2.116(I)(1) is reviewed *de novo*. *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket Nos. 325258 *et al*); slip op at 16, lv pending ("*Gillette*"). MCR 2.116(I)(1) provides, "If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay."[6] We also review *de novo* issues involving statutory interpretation as well as constitutional questions. *Gillette*, ___ Mich App at ___; slip op at 16.

## IV. IMPLIED REPEAL OF THE COMPACT ELECTION PROVISION

The central issue in this case is whether the Court of Claims erred in concluding that the SBTA's mandatory apportionment provision impliedly repealed the Compact's apportionment election provision for the tax years at issue (*i.e.*, 2005, 2006, and 2007). We agree with plaintiffs

---

[5] In *Johnson Matthey* (Docket No. 327251), the Court of Claims' order also included language referencing the Court of Claims' opinions in two other cases holding that 2014 PA 282 negated the plaintiffs' claims for refunds under the MBTA. The two cases were *Yaskawa America, Inc v Dep't of Treasury* (Docket No. 325475), and *Ingram Micro, Inc v Dep't of Treasury* (Docket No. 325507), both of which were part of the 50 consolidated appeals that were the subject of this Court's recent published opinion in *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket Nos. 325258 *et al*), lv pending, which is discussed later in this opinion.

[6] The Court of Claims' opinion in *EMCO* stated that it was granting summary disposition to defendant pursuant to MCR 2.116(I)(2), which states: "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." However, the orders in the other 22 consolidated cases stated that summary disposition was granted to defendant pursuant to MCR 2.116(I)(1). The issues raised in these cases concern questions of law. As such, whether defendant is entitled to summary disposition is a matter of law. Thus, we conclude that review under MCR 2.116(I)(1) is proper. It is well settled that regardless of the subrule cited by the trial court in granting summary disposition, this Court will review the court's order under the correct subrule. See *Spiek v Dep't of Transp*, 456 Mich 331, 338 n 9; 572 NW2d 201 (1998).

and hold that the SBTA did not impliedly repeal the Compact's apportionment election provision.

## A.  BACKGROUND LAW

"When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).  "Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Id*.  Statutory language must be read in context, and undefined words are to be given their plain and ordinary meanings.  *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014).  "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

In general, "repeals by implication are disfavored." *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 576; 548 NW2d 900 (1996).  As such, it is generally presumed "that if the Legislature had intended to repeal a statute or statutory provision, it would have done so explicitly." *Id*.  When presented with a claim that two statutes conflict, a court must endeavor to construe the statutes harmoniously if possible. *Id*.

> [R]epeal by implication will not be found if any other reasonable construction may be given to the statutes, such as reading *in pari materia* two statutes that share a common purpose or subject, or as one law, even if the two statutes were enacted on different dates and contain no reference to one another.  However, a repeal of a statute may be inferred in two instances: (1) where it is clear that a subsequent legislative act conflicts with a prior act; or (2) when a subsequent act of the Legislature clearly is intended to occupy the entire field covered by a prior enactment.  [*City of Kalamazoo v KTS Indus, Inc*, 263 Mich App 23, 36-37; 687 NW2d 319 (2004) (citations omitted; emphasis added).]

Similarly, the Michigan Supreme Court previously explained, "[I]f the provisions of a later statute are so at variance with those of an earlier act, or a part thereof, that both cannot be given effect[,] then the later enactment control[s] and there is a repeal by implication.  In such a case it must be presumed that the legislature intended a repeal." *Jackson v Mich Corrections Comm*, 313 Mich 352, 357; 21 NW2d 159 (1946).  "Repeals by implication are not favored, but do happen, and, when clear, must be given effect." *Id*. (quotation marks and citation omitted).  Therefore, "if there is such repugnance that both [statutes] cannot operate, then the last expression of the legislative will must control." *Id*. at 356.  "[T]he latter act operates *to the extent of the repugnancy*, as a repeal of the first . . . ." *Id*. at 357 (quotation marks and citation omitted).  See also *Metro Life Ins Co v Stoll*, 276 Mich 637, 641; 268 NW 763 (1936) ("It is the rule that where two laws *in pari materia* are in irreconcilable conflict, the one last enacted will control or be regarded as an exception to or qualification of the prior statute.").  Notably, "when faced with two statutes that bear on the same subject, our task is not to discern the most logical construction of the more recent statute, but to labor to permit the survival of both enactments if

possible." *House Speaker v State Admin Bd*, 441 Mich 547, 571-572; 495 NW2d 539 (1993) (quotation marks and citation omitted).

## B. ANALYSIS

During the tax years at issue in this case, § 41 of the SBTA provided that "[a] taxpayer whose business activities are taxable both within and without this state, *shall* apportion his tax base as provided in this chapter." MCL 208.41 (emphasis added). As previously discussed, for tax years prior to 1991, the SBTA prescribed an equally weighted, three-factor apportionment formula comprised of property, payroll, and sales factors. Beginning with the 1991 tax year, however, the SBTA required the sales factor to be weighted more heavily than the other factors, and the weight of the sales factor was further increased in later tax years by legislative amendments to the act. See MCL 208.45; MCL 208.45a. For the 2005 tax year, the sales factor was weighted at 90%. MCL 208.45a(1)(c). For the 2006 and 2007 tax years, the sales factor was weighted at 92.5%. MCL 208.45a(2)(c).

To the contrary, during the tax years at issue, the Compact's apportionment election provision stated:

(1) Any taxpayer subject to an income tax whose income is subject to apportionment and allocation for tax purposes pursuant to the laws of a party state or pursuant to the laws of subdivisions in 2 or more party states may elect to apportion and allocate his income in the manner provided by the laws of such state or by the laws of such states and subdivisions without reference to this compact, or may elect to apportion and allocate in accordance with Article IV . . . . [MCL 205.581, Art III(1).]

As explained *supra*, article IV of the Compact set forth an equally weighted, three-factor apportionment formula comprised of property, payroll, and sales factors. MCL 205.581, Art IV(9). Thus, the Compact election "provision allow[ed] a taxpayer subject to an income tax to elect to use a party state's apportionment formula or the Compact's [equally weighted,] three-factor formula." *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 653; 852 NW2d 865 (2014) (opinion by VIVIANO, J.) ("*IBM*").

The Court of Claims correctly concluded that an apparent conflict exists between the language of the SBTA and the Compact election provision. Under § 41 of the SBTA, a multistate taxpayer "*shall* apportion his tax base as provided in this chapter." MCL 208.41 (emphasis added). "The Legislature's use of the word 'shall' generally indicates a mandatory directive, not a discretionary act." *Smitter v Thornapple Twp*, 494 Mich 121, 136; 833 NW2d 875 (2013). The SBTA apportionment formula for the tax years at issue weighted the sales factor more heavily than the other factors, MCL 208.45a(1)(c), (2)(c), and there is no language in the SBTA indicating that a taxpayer was permitted to use an apportionment formula other than the one provided in that chapter. By contrast, the language of the Compact allowed a taxpayer to choose the equally weighted, three-factor formula in the Compact. MCL 205.581, Arts III(1), IV(9). As the Court of Claims explained, "[b]ecause the SBTA during the tax years in question mandates the use of one apportionment formula, while the Compact provides for the discretionary use of another apportionment formula, the statutes are in apparent conflict."

-12-

However, we disagree with the Court of Claims that the two statutes cannot be harmonized. Rather, we find persuasive the reasoning utilized in the lead opinion in *IBM*, 496 Mich at 651-662 (opinion by VIVIANO, J.),[7] concerning the interplay between the MBT and the Compact. Consistent with that analysis, we hold that it is possible to reasonably construe § 41 of the SBTA and Articles III(1) and IV(9) of the Compact in harmony with each other.

The lead opinion explained,

[W]here the intent of the Legislature is claimed to be unclear, it is our duty to proceed on the assumption that the Legislature desired both statutes to continue in effect unless it manifestly appears that such view is not reasonably plausible. Repeals by implication will be allowed only when the inconsistency and repugnancy are plain and unavoidable. We will construe statutes, claimed to be in conflict, harmoniously to find *any other* reasonable construction than a repeal by implication. Only when we determine that two statutes are so incompatible that both cannot stand will we find a repeal by implication. [*IBM*, 496 Mich at 651-652 (opinion by VIVIANO, J.) (quotation marks and footnotes omitted).]

In attempting to find a harmonious construction, courts should consider all statutes addressing the same general subject matter as comprising part of one system. *Id*. at 652, citing *Rathbun v Michigan*, 284 Mich 521, 544; 280 NW 35 (1938). "Further, '[s]tatutes *in pari materia*, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each . . . .' " *IBM*, 496 Mich at 652 (opinion by VIVIANO, J.) (alterations in original), quoting *Rathbun*, 284 Mich at 544.

It is a well-established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject-matter has been changed or modified from time to time. In other words, in determining the meaning of a particular statute, resort may be had to the established policy of the legislature as disclosed by a general course of legislation. With this purpose in view therefore it is proper to consider, not only acts passed at the same session of the legislature, but also acts passed at prior and subsequent sessions. [*IBM*, 496 Mich at 652-653 (opinion by VIVIANO, J.), quoting *Rathbun*, 284 Mich at 543-544 (block quote omitted).]

---

[7] Because a majority of the justices in *IBM* did not agree on the implied-repeal analysis contained in the lead opinion, the lead opinion's holding on that issue is not binding authority. See *Burns v Olde Discount Corp*, 212 Mich App 576, 582; 538 NW2d 686 (1995); *Felsner v McDonald Rent-A-Car, Inc*, 193 Mich App 565, 569; 484 NW2d 408 (1992).

Thus, the Compact's election provision and § 41 of the SBTA should be construed together as statutes *in pari materia* because they share, like the Compact and the MBTA, "the common purpose of setting forth the methods of apportionment of a taxpayer's multistate business income." *IBM*, 496 Mich at 653 (opinion by VIVIANO, J.).[8]

In reviewing the statutes *in pari materia*, we conclude that the following reasoning, employed by the lead opinion in *IBM* with regard to the MBTA and the Compact, is equally applicable in this case:

> [T]he Compact's election provision, by using the terms "may elect," contemplates a divergence between a party state's mandated apportionment formula and the Compact's own formula—either at the time of the Compact's adoption by a party state or at some point in the future. Otherwise, there would be no point in giving taxpayers an election between the two. In fact, reading the Compact's election provision as forward-looking—i.e., contemplating the future enactment of a state income tax with a mandatory apportionment formula different from the Compact's apportionment formula—is the only way to give meaning to the provision when it was enacted in Michigan. Viewed in this light, the [MBT's] mandatory apportionment language may plausibly be read as compatible with the Compact's election provision.

---

[8] We recognize that the rule of *in pari materia* "does not permit the use of a previous statute to control by way of former policy the plain language of a subsequent statute . . . ." *Voorhies v Faust*, 220 Mich 155, 157; 189 NW 1006 (1922). However, neither the *IBM* lead opinion, nor our opinion in this case, effectively resolves the conflict between the MBT or the SBT *in favor* of the Compact, *i.e.*, the earlier enacted statute, or permits the utilization of the apportionment provision in the Compact in such a way that contradicts the plain language of a subsequent statute. Rather, as explained in this opinion, we conclude that the apportionment provisions of the SBTA and the Compact can be read harmoniously.

Additionally, we recognize that "the interpretive aid of the doctrine of *in pari materia* can only be utilized in a situation where the section of the statute under examination is itself ambiguous." *Tyler v Livonia Pub Sch*, 459 Mich 382, 392; 590 NW2d 560 (1999), citing *Voorhies*, 220 Mich at 157; see also *In re Indiana Mich Power Co*, 297 Mich App 332, 344; 824 NW2d 246 (2012). However, this principle does not preclude the use of the doctrine in this case. Although the language of § 41 of the SBTA arguably may be unambiguous when read in isolation, the interpretation and construction of that section—or a determination of the applicability of that section on its own—is not at issue here. Rather, we are inescapably required to consider *the effect of MCL 208.41 on the Compact election provision*, which, in this case, clearly requires consideration of the statutes together in the context of the statutory scheme as a whole. Cf. *KTS Indus, Inc*, 263 Mich App at 36-37 ("[R]epeal by implication will not be found if any other reasonable construction may be given to the statutes, such as reading *in pari materia* two statutes that share a common purpose or subject, or as one law, even if the two statutes were enacted on different dates and contain no reference to one another.").

* * *

Because the Legislature gave no clear indication that it intended to repeal the Compact's election provision, we proceed under the assumption that the Legislature intended for both to remain in effect. After reading the statutes *in pari materia*, we conclude that a reasonable construction exists other than a repeal by implication. Under Article III(1) of the Compact, the Legislature provided a multistate taxpayer with a choice between the apportionment method contained in the Compact or the apportionment method required by Michigan's tax laws. If a taxpayer elects to apportion its income through the Compact, Article IV(9) mandates that the taxpayer do so using a three-factor apportionment formula. Alternatively, if the taxpayer does not make the Compact election, then the taxpayer must use the apportionment formula set forth in Michigan's governing tax laws. In this case, IBM's tax base arose under the [MBT]. Had it not elected to use the Compact's apportionment formula, IBM would have been required to apportion its tax base consistently with the mandatory language of the [MBT]— i.e., through the [MBT's] sales-factor apportionment formula. Thus, we believe the [MBT] and the Compact are compatible and can be read as a harmonious whole. [*Id*. at 656-658 (opinion by VIVIANO, J.).]

In the context of the instant case, the Legislature provided plaintiffs with a choice, through Article III(1) of the Compact, between the apportionment method contained in the Compact or the apportionment method required by the SBTA. If a taxpayer elects to apportion its income as provided by the Compact, Article IV(9) requires that the taxpayer do so using a three-factor apportionment formula. Alternatively, if the taxpayer does not elect the apportionment method under the Compact, then the taxpayer is required to use the apportionment formula set forth in the applicable tax laws. There is a reasonable construction that harmonizes the two statutes. Thus, the presumption against implied repeals has not been rebutted here. See *id*. at 660 ("[B]ecause there is a presumption *against* implied repeals, it is our task to determine if there is *any other reasonable construction* that would harmonize the two statutes and avoid a repeal by implication." [Footnotes omitted.]).

The lead opinion in *IBM* also found that its conclusion that the Compact apportionment provision was not impliedly repealed was consistent with the development of Michigan tax law, concluding that a "review of the statutes *in pari materia* indicates a uniform and consistent purpose of the Legislature for the Compact's election provision to operate alongside Michigan's tax acts." *Id*. at 656. The opinion noted that the Legislature, despite its full knowledge of the Compact, left its election provision intact while repealing or amending other acts that were inconsistent with provisions concerning business taxation. *Id*. at 657. Likewise, the opinion also noted the Legislature's retroactive amendment of the Compact effective January 1, 2011, which did not apply to all tax years subject to the MBTA, in ascertaining the Legislature's intent to keep the Compact's provisions intact despite the enactment and amendment of the MBTA. *Id*. at 658-659 (discussing 2011 PA 40).

We acknowledge the enactment of 2014 PA 282, which provides, in pertinent part:

-15-

Enacting section 1. 1969 PA 343, MCL 205.581 to 205.589, is repealed retroactively and effective beginning January 1, 2008. *It is the intent of the legislature that the repeal of 1969 PA 343, MCL 205.581 to 205.589, is to express the original intent of the legislature regarding the application of section 301 of the Michigan business tax act, 2007 PA 36, MCL 208.1301, and the intended effect of that section to eliminate the election provision included within section 1 of 1969 PA 343, MCL 205.581,* and that the 2011 amendatory act that amended section 1 of 1969 PA 343, MCL 205.581, was to further express the original intent of the legislature regarding the application of section 301 of the Michigan business tax act, 2007 PA 36, MCL 208.1301, and to clarify that the election provision included within section 1 of 1969 PA 343, MCL 205.581, is not available under the income tax act of 1967, 1967 PA 281, MCL 206.1 to 206.713. [Emphasis added.]

Through 2014 PA 282, the Legislature clarified—contrary to the lead opinion's conclusion in *IBM*—that it had intended to impliedly repeal the Compact when it enacted the MBT through 2007 PA 36, and that this intent was further revealed by its subsequent express repeal of the Compact election provision, effective January 1, 2011, under 2011 PA 40.

However, in clarifying its legislative intent, the Legislature included nothing in 2014 PA 282 regarding the validity of the Compact election provision for multistate taxpayers subject to the SBTA before the effective date of the MBTA. In so doing, the Legislature left open the application of the Compact apportionment formula during tax years subject to the SBTA. If it so chose, the Legislature easily could have closed this door. Instead, it chose not to, and it is not our role to second guess its reasoning for not doing so. Thus, we conclude, consistent with the lead opinion's analysis in *IBM*, that

the Legislature, in enacting [and amending] the [SBTA], had full knowledge of the Compact and its provisions. Even with such knowledge on [multiple] occasions, the Legislature left the Compact's election provision intact [with regard to the SBTA]. By contrast, the Legislature expressly repealed or amended other inconsistent acts regarding the taxation of businesses[, including its repeal of the Compact with regard to tax years subject to the MBTA]. Had the Legislature believed that the Compact's election provision no longer had a place in Michigan's tax system or conflicted with the purpose of the [SBTA], it could have taken the necessary action to eliminate the election provision. [*IBM*, 496 Mich at 657 (opinion by VIVIANO, J.).]

See also *id*. at 659 n 59 (" '[T]he later express repeal of a particular statute may be some indication that the legislature did not previously intend to repeal the statute by implication.' "), quoting 1A Singer, Sutherland Statutory Construction (7th ed), § 23:11, p 485.

Accordingly, especially in light of the Legislature's clear expressions of intent regarding the express and implied repeal of the Compact in conjunction with the enactment of the MBTA, and the lack of any indication that § 41 of the SBTA was intended to repeal the apportionment election provision in the Compact, we assume that the Legislature intended for the Compact

election provisions to remain in effect alongside the SBTA. See *id*. at 657. Additionally, as explained *supra*, the statutes may be reasonably construed in harmony. See *id*.

Thus, because a "repeal by implication will not be found if *any other reasonable construction* may be given to the statutes," *KTS Indus*, 263 Mich App at 36-37 (emphasis added), the Court of Claims erred in concluding that the Compact's election provision was impliedly repealed by the SBTA.

## V. THE BINDING NATURE OF THE COMPACT AND OTHER CONSTITUTIONAL CHALLENGES

Next, plaintiffs raise a series of arguments regarding whether the Compact was binding on subsequent legislatures, whether the Compact was superior to statutory law, and whether an implied repeal of the Compact would violate various state and federal constitutional provisions. These claims are rooted in the Court of Claims' conclusion that the Compact was impliedly repealed by the SBTA. As explained *supra*, we hold that the SBTA did not impliedly repeal the Compact's apportionment election provision. Thus, to the extent that plaintiffs assert that *a repeal* of the apportionment election provision of the Compact was impermissible or violated state and federal constitutional provisions, we need not address those claims in light of our holding.[9] Furthermore, we reject any of plaintiffs' additional claims that are not rooted in the assumption that the SBTA impliedly repealed the election apportionment provisions of Compact—and, instead, concern whether the Compact is binding and superior to Michigan statutory law—for the reasons provided by this Court in reviewing the validity of 2014 PA 282 in *Gillette*, which are discussed next in the context of Johnson Matthey's challenges to 2014 PA 282.

---

[9] Plaintiffs also claim that the Court of Claims erred in determining that plaintiffs' constitutional claims were untimely. For the reasons stated above, we need not address this issue.

Nevertheless, we note that the Court of Claims correctly held that plaintiffs' constitutional challenges were untimely. Pursuant to MCL 205.27a(7), a taxpayer claiming a refund on the basis that a Michigan tax statute is invalid under, or is preempted by, a constitutional provision or federal law must claim a refund within 90 days of the date set for filing a return. See also *American States Ins Co v Dep't of Treasury*, 220 Mich App 586, 589, 591; 560 NW2d 644 (1996). Plaintiffs are seeking refunds premised in part on claims that an implied repeal of the Compact election provision would violate various constitutional provisions. As such, they are claiming refunds based on arguments that a tax statute is preempted by constitutional provisions. Accordingly, under MCL 205.27a, they were required to file those claims within 90 days after the date set for filing a return.

The Court of Claims found that plaintiffs did not assert their constitutional claims within the 90-day period, and plaintiffs fail to dispute that finding. Additionally, some plaintiffs do not even address the Court of Claims' ruling that the constitutional claims were untimely. To the extent that these plaintiffs fail to address the basis of the Court of Claims' decision, we deem this argument abandoned. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

-17-

## VI.  JOHNSON MATTHEY'S CHALLENGES TO 2014 PA 282

In Docket No. 327251, Johnson Matthey challenges the validity and constitutionality of 2014 PA 282 (hereinafter referred to as "PA 282"), which the Legislature enacted to retroactively withdraw Michigan from the Compact.  We reject Johnson Matthey's claims.

Johnson Matthey's numerous state and federal constitutional challenges are identical in all relevant respects to the arguments raised by some of the plaintiffs in *Gillette*.  In that case, we concluded that the Compact was not a binding contract on this state but was merely an advisory agreement, such that PA 282's removal of Michigan from membership in the Compact was not prohibited.  *Gillette*, ___ Mich App at ___; slip op at 18-19, 21-22.  Further, "the Compact contained no features of a binding interstate compact and, therefore, was not a compact enforceable under the Contract Clause."  *Id*. at ___; slip op at 20.  Accordingly, the Compact was not superior to statutory law, and it was "subject to Michigan law concerning the interpretation of statutes."  *Id*. at ___; slip op at 18-19, 22.  See also *id*. at ___ n 4; slip op at 19 n 4.  Furthermore, a retroactive repeal of the Compact did not violate the Contract Clauses of either the federal or state Constitutions.  *Id*. at ___; slip op at 19, 21.

We also held that "the retroactive repeal of the Compact did not violate the Due Process Clauses of either the state or federal [C]onstitutions or Michigan's rules regarding retrospective legislation.  Nor did it violate the terms of the Compact itself."  *Id*. at ___; slip op at 22.  Additionally, we held that the enactment of PA 282 "did not violate the separation of powers provision of the state Constitution[.]"  *Id*. at ___; slip op at 30.  Moreover, "PA 282 does not violate the Commerce Clause" of the United States Constitution.  *Id*. at ___; slip op at 32.  We also concluded that "the enactment of 2014 PA 282 did not violate the Title-Object Clause, the Five-Day Rule, or the Distinct-Statement Clause of the Michigan Constitution."  *Id*. at ___; slip op at 34.  Likewise, we rejected the plaintiffs' change-in-purpose challenge.  *Id*. at ___; slip op at 38.

In sum, we rejected in *Gillette* the same arguments that Johnson Matthey raises here.  Thus, Johnson Matthey's constitutional challenges to PA 282 are devoid of merit.

## VII.  WHETHER THE SBT IS AN INCOME TAX

Defendant argues on cross-appeal that the Court of Claims erred in concluding that the SBT is an income tax for purposes of the Compact election provision, such that the court erroneously concluded that the SBTA was subject to, and therefore conflicted with, the Compact's election provision.  We disagree.

As stated *supra*, the Compact's apportionment election provision previously stated:

(1) Any taxpayer *subject to an income tax* whose income is subject to apportionment and allocation for tax purposes pursuant to the laws of a party state or pursuant to the laws of subdivisions in 2 or more party states may elect to apportion and allocate his income in the manner provided by the laws of such state or by the laws of such states and subdivisions without reference to this compact, or may elect to apportion and allocate in accordance with Article IV . . . . [MCL 205.581, Art III(1) (emphasis added).]

-18-

The Compact defined an "income tax" as "a tax imposed on or measured by net income including any tax imposed on or measured by an amount arrived at by deducting expenses from gross income, 1 or more forms of which expenses are not specifically and directly related to particular transactions." MCL 205.581, Art II(4). As such, "[u]nder the Compact's broad definition, a tax is an income tax if the tax measures net income by subtracting expenses from gross income, with at least one of the expense deductions not being specifically and directly related to a particular transaction." *IBM*, 496 Mich at 663 (opinion by VIVIANO, J.).

The SBT fits this definition. The SBT base is calculated by using federal taxable income as a starting point and then making various additions and subtractions as required by the act. *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 497, 497 n 15; 373 NW2d 730 (1985). See also *Trinova Corp v Dep't of Treasury*, 433 Mich 141, 150; 445 NW2d 428 (1989) (*Trinova I*), aff'd 498 US 358; 111 S Ct 818; 112 L Ed 2d 884 (1991); *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 537; 831 NW2d 255 (2013) ("The SBTA unambiguously stated that '[tax base] means business income' and '[business income] means federal taxable income.' MCL 208.9(1); MCL 208.3(3)." [Alterations in original.]). Federal taxable income, for purposes of the SBT, consists of gross income minus deductions allowed by the federal tax code. See MCL 208.5(3), citing 26 USC 63. See also 26 USC 63(a); *Mobil Oil*, 422 Mich at 497 n 15. In general, deductions from gross income permitted by the federal tax code include ordinary and necessary expenses that are paid or incurred while running a business. See 26 USC 162(a); *Mobil Oil*, 422 Mich at 489.

As the Court of Claims explained, pursuant to MCL 208.9(2) through (6), "[t]he SBT . . . expands the income tax base by adding back some, but not all, of the federal expense deductions taken to arrive at federal taxable income." The Court of Claims further explained:

> For example, except for compensation, most ordinary and necessary business expenses incurred in the carrying on of a trade or business are deducted from gross income to arrive at federal taxable income, but are not added back as part of the SBT tax base. The resulting tax is thus in part measured by "an amount arrived at by deducting expenses from gross income" for purposes of defining income tax under the Compact. That some expenses such as compensation are also added back to the SBT tax base before the tax is calculated does not alter the conclusion that the SBT is *"imposed on or measured by an amount arrived at by deducting expenses from gross income*, 1 or more forms of which expenses are not specifically and directly related to particular transactions." Under the plain language of the Compact, it is therefore an income tax for Compact purposes. [Citations omitted.]

See also *Trinova I*, 433 Mich at 150-151 (explaining some of the adjustments to "business income," i.e., federal taxable income, which must be made when calculating the SBT base); *id.* at 149 n 6 (noting that the SBTA prescribed "various exclusions, exemptions, and industry-specific adjustments").

-19-

As the Court of Claims reasoned, some ordinary business expenses, such as insurance premiums, rent,[10] and research and development costs, which are deducted when calculating federal taxable income,[11] are not added back when determining the SBT base. See MCL 208.9 (prescribing the adjustments to federal taxable income that are required in calculating the SBT base). Consistent with the Compact's definition, these expenses are not specifically and directly related to particular transactions. See MCL 205.581, Art II(4).

Therefore, because the SBT is calculated by beginning with federal taxable income, which consists of gross income minus federally allowed deductions, and because some deductions allowed under the federal tax code are not added back to the SBT base, it follows that the SBT is measured by an amount arrived at through the deduction of expenses from gross income. Thus, the Court of Claims properly determined that the SBTA qualifies as an income tax as defined by the Compact because it "tax[ed] a variation of net income[.]" *IBM*, 496 Mich at 667 (opinion by VIVIANO, J.).

As defendant emphasizes on appeal, we recognize that a provision of the SBTA stated that "[t]he tax levied under this section and imposed is upon the privilege of doing business and not upon income." MCL 208.31(3). However, a similar provision of the MBTA provided that "[t]he [modified gross receipts tax ("MGRT")] levied and imposed under this section is upon the privilege of doing business and not upon income or property," MCL 208.1203(2), and this provision did not prevent the Michigan Supreme Court from unanimously concluding in *IBM* that the MGRT was an "income tax" under the broad definition of that term in the Compact, see *IBM*, 496 Mich at 665-667 (opinion by VIVIANO, J.); *id.* at 664 ("Although this statement indicates that the MGRT is not a tax upon income under the [M]BTA, we must still determine whether the MGRT fits under the broad definition of 'income tax' under the Compact."); *id.* at 668 (ZAHRA, J., concurring); *id.* at 672 n 3 (MCCORMACK, J., dissenting).

As the lead opinion in *IBM* explained, the Court was not required to "put a definitive label on the MGRT, a task with which commentators have struggled." *Id.* at 663 n 70 (opinion by VIVIANO, J.). Commentators had characterized the MGRT as many types of taxes other than an income tax, but the lead opinion in *IBM* emphasized that its task was merely to determine whether the MGRT constituted an "income tax" under the Compact's definition. *Id.*; see also *id.* at 667 n 85 ("Our holding is limited to the determination that the MGRT is included within the Compact definition of 'income tax.' . . . [W]e do not need to reach the issue whether the MGRT, generally, is an income tax.").

Likewise, here, the labels that have been used to describe the SBT in various contexts are not dispositive of whether the SBT qualifies as an income tax under the broad Compact

---

[10] Although most rental expenses are not added back to the SBT base, MCL 208.9(4)(h) required a federal deduction for rent attributable to certain "lease back" transactions to be added back to the SBT base.

[11] See 26 USC 162(a) (allowing federal deductions for ordinary and necessary expenses paid or incurred in carrying on a trade or business).

definition of that term. Although both the United States Supreme Court and the Michigan Supreme Court have characterized the SBT as a value-added tax that measures business activity rather than an income tax, see *Trinova II*, 498 US at 367; *Trinova I*, 433 Mich at 149, those characterizations were not made in the context of the Compact definition of an income tax. Similarly, even though this Court treated the SBT as a value-added tax rather than an income tax in determining the application of a federal statute barring state taxes imposed on or measured by net income derived from interstate commerce, when the only activity in the state involved solicitation of orders, see *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 307-311; 497 NW2d 595 (1993), that analysis was not conducted under the Compact definition of an income tax. The issue here is limited to the application of the Compact definition; no definitive characterization of the SBT is required, just as no definitive characterization of the MGRT was required in *IBM* in order to conclude that it was an income tax under the Compact. See *IBM*, 496 Mich at 663 n 70 (opinion by VIVIANO, J.).

## VIII. WHETHER PLAINTIFFS' CLAIMS ARE BARRED BY THE RETROACTIVE REPEAL OF THE COMPACT BY 2014 PA 282

Lastly, defendant argues on cross-appeal that the explicit repeal of the Compact by PA 282 extends to tax years 2005, 2006, and 2007, and taxpayers subject to the SBTA during those years. In particular, defendant contends that the language of PA 282 stating that the Compact "is repealed retroactively and effective beginning January 1, 2008," means that no taxpayer may attempt to elect the Compact apportionment method following that date. We disagree.

Defendant's contention is contravened by the language of the enacting section of PA 282:

Enacting section 1. 1969 PA 343, MCL 205.581 to 205.589, is repealed retroactively and effective beginning January 1, 2008. It is the intent of the legislature that the repeal of 1969 PA 343, MCL 205.581 to 205.589, is to express the original intent of the legislature regarding the application of section 301 of the Michigan business tax act, 2007 PA 36, MCL 208.1301, and the intended effect of that section to eliminate the election provision included within section 1 of 1969 PA 343, MCL 205.581, and that the 2011 amendatory act that amended section 1 of 1969 PA 343, MCL 205.581, was to further express the original intent of the legislature regarding the application of section 301 of the Michigan business tax act, 2007 PA 36, MCL 208.1301, and to clarify that the election provision included within section 1 of 1969 PA 343, MCL 205.581, is not available under the income tax act of 1967, 1967 PA 281, MCL 206.1 to 206.713.

This language plainly indicates that the Compact was expressly repealed beginning January 1, 2008. The SBTA was no longer in effect on January 1, 2008, as it was repealed effective December 31, 2007. See 2006 PA 325. Moreover, the enacting section of PA 282 indicates that the Legislature's explicit repeal of the Compact was intended to effectuate the Legislature's original intent concerning the application of MCL 208.1301, a section of the MBTA, and the intended effect of that section to eliminate the apportionment election provision of the Compact. The enacting section of PA 282 also explains that 2011 PA 40 was intended to *further* express the Legislature's original intent with regard to the application of MCL 208.1301 and to clarify that the Compact apportionment election provision was not available under the income tax act of

1967. There is no language in the enacting section that suggests a legislative intent to repeal the Compact with respect to tax years affected by the SBTA or with respect to SBT taxpayers. See *Sun Valley Foods*, 460 Mich at 236 ("If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.").

Moreover, the lead and concurring opinions in *IBM* also support the conclusion that PA 282's explicit repeal of the Compact effective January 1, 2008 did not extend to tax years before 2008. In *IBM*, our Supreme Court analyzed 2011 PA 40, which contained language similar to the enacting section of PA 282. 2011 PA 40 stated that "beginning January 1, 2011[,]" a taxpayer subject to the MBTA or the income tax act of 1967 could not elect to use the Compact apportionment formula. The lead and concurring opinions concluded that the Compact election provision was in effect for the 2008 tax year at issue in *IBM*, implicitly finding that the "beginning January 1, 2011" language in 2011 PA 40 denotes *tax years* beginning in 2011. See *IBM*, 496 Mich at 659 (opinion by VIVIANO, J.); *id*. at 668-670 (ZAHRA, J., concurring). See also *Gillette*, ___ Mich App at ___; slip op at 17 ("In *IBM*, the Supreme Court held that through 2011 PA 40 the Legislature created a window (from January 1, 2008 until January 1, 2011) wherein relevant taxpayers could still utilize the apportionment option available under Article IV of the Compact."). Likewise, the language in PA 282 stating that the Compact was repealed "effective beginning January 1, 2008," is properly understood as indicating that the express repeal of the Compact applies to *tax years* beginning on January 1, 2008.

Thus, the express repeal of the Compact by PA 282 does not apply to the SBTA.

IX. CONCLUSION

We agree with plaintiffs that the trial court erred in concluding that the SBTA impliedly repealed the Compact election provision. However, the rest of plaintiffs' claims on appeal, as well as defendant's alternative grounds for affirmance, lack merit.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, an issue of public importance being involved. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood

-22-